Eric DRAKE, Appellant

v.

Stephen WALKER, D.D.S. and Marshal Goldberg, D.D.S., Appellees

No. 05-16-00306-CV

Court of Appeals of Texas, Dallas.

Opinion Filed July 6, 2017.

Rehearing Overruled September 13, 2017

Eric Drake, Richardson, TX, pro se.

Ty Bailey, Theibaud Remington Thornton Bailey LLP, Dallas, TX, for Appellee.

Before Justices Lang, Myers, and Stoddart

## OPINION

Opinion by Justice Lang

In this opinion, we must decide two issues of first impression. First, we address whether the filing of a petition pursuant to Texas Rule of Civil Procedure 202 to "investigate" a "potential" health care liability claim triggers the requirement of a plaintiff to file an expert report pursuant to section 74.351(a) of the Texas Civil Practice and Remedies Code. See TEX. R. CIV. P. 202; TEX. CIV. PRAC. & REM. CODE ANN.

§ 74.351(a) (West Supp. 2016). We conclude, on this record, it does not. .

Second, we must decide if, after the dismissal with prejudice of a health care liability claim pursuant to Texas Rule of Civil Procedure 91a and the reversal on appeal of that dismissal, the 120-day time period for filing an expert report pursuant to section 74.351(a) is tolled for the period during which the case was on appeal. See TEX. R. CIV. P. 91a; CIV. PRAC. & REM. § 74.351(a). We conclude, on this record, that the 120-day time period is tolled.

Eric Drake, proceeding pro se, appeals the trial court's order dismissing this health care liability lawsuit for failure to provide an expert report and awarding attorney's fees to appellees pursuant to section 74.351. See CIV. PRAC. & REM. § 74.351. In eight issues on appeal, Drake contends the trial court erred by denying Drake's motions for continuances, to reinstate, and for new trial and requests to participate in hearings by telephone; awarding attorney's fees to appellees in the amount of $15,374.50; awarding attorney's fees against a party "declared as an indigent"; concluding Drake failed to comply with section 74.351(a); violating Drake's due process rights; and not recusing the trial court judge.[1]

---

1. Specifically, Drake's eight issues are stated in his appellate brief as follows:

ISSUE ONE: Whether or not the trial court erred in denying Appellant's request to participate in the Appellees' February 15, 2016 motion to dismiss hearing and Drake's hearing on his Motion to Reinstate by telephone.

ISSUE TWO: Whether or not the trial court erred in awarding attorney fees to the Appellees.

ISSUE THREE: Whether or not the trial court erred in awarding attorney fees against a party it has declared as an indigent in a legal proceeding or litigation.

ISSUE FOUR: Whether or not the Appellant filed his Expert Report timely.

ISSUE FIVE: Whether or not the trial court violated Appellant's due process rights and was biased and unfair. Appellant, a Christian has a right to object to a "gay" or "lesbian" judge.

ISSUE SIX: Whether or not the Honorable William Tapscott Jr. should have recused himself because he was a defendant in a pending federal lawsuit where Drake was the "plaintiff."

ISSUE SEVEN: Whether or not the trial court abused its discretion and erred in dismissing the Appellant's claim against Appellees for failure to file an Expert Report. Appellees' objection to Drake's expert report should be overruled.

ISSUE EIGHT: Whether or not the Honorable William Tapscott Jr. abused his discre-

We decide (1) in favor of Drake on his fourth issue and portions of his second, seventh, and eighth issues, and (2) against him on his fifth and sixth issues. We need not address Drake's first and third issues or the remaining portions of his second and eighth issues.

We reverse the trial court's order granting appellees' motion to dismiss for failure to provide an expert report and awarding attorney's fees to appellees pursuant to section 74.351, render judgment denying appellees' motion to dismiss for failure to provide an expert report, and remand this case to the trial court for further proceedings consistent with this opinion.

## I. FACTUAL AND PROCEDURAL CONTEXT

On December 19, 2011, Drake received dental treatment from appellee Stephen Walker, D.D.S., at a dental clinic owned by appellee Marshal Goldberg, D.D.S. Ten days later, on December 29, 2011, Drake filed a pro se "Petition for Pre-Suit Investigatory Depositions Under T.R.C.P. 202.1(b)," see TEX. R. CIV. P. 202.1(b), which proceeding was assigned trial court cause number CC-11-08852-D (the "Rule 202 proceeding"). Appellees, who were the named "Respondents" in that petition, jointly filed a January 19, 2012 original answer in that proceeding. On January 22, 2012, Drake nonsuited that proceeding.

Drake filed this case, trial court cause number CC-13-06774-D, against appellees on December 3, 2013. In his last-filed petition at the time of the order complained of, Drake asserted causes of action against appellees for "medical negligence" and deceptive trade practices pertaining to the dental care provided by appellees. Goldberg and Walker filed separate general denial answers dated, respectively, De-

cember 30, 2013, and January 8, 2014. Further, appellees jointly filed a February 13, 2014 "Motion to Dismiss Baseless Causes of Action" pursuant to Texas Rule of Civil Procedure 91a, see TEX. R. CIV. P. 91a, and a March 11, 2014 "Motion to Dismiss With Prejudice for Failure to Provide Expert Report" pursuant to section 74.351. In their motion to dismiss for failure to provide an expert report, appellees stated in part,

In this case, ... the 120 day deadline [for providing an expert report] began to run from the date Plaintiff filed his Petition for Rule 202 Pre-Suit Depositions (here December 29, 2011). The 120 day deadline was then tolled from the time that Plaintiff non-suited the Rule 202 Petition and the case was dismissed without prejudice (January 22, 2012) until he refiled this case on December 3, 2013. . . .

As the original claim was filed on December 29, 2011, tolled between January 22, 2012 and December 3, 2013, and refiled on December 3, 2013, Plaintiff was required by statute to provide expert reports by March 10, 2014. Plaintiff did not serve on Defendants or Defendants' counsel an expert report with a curriculum vitae of the expert listed in the report. Thus, Plaintiff did not comply with the requirements of Chapter 74.

The trial court signed an order dated March 19, 2014, granting appellees' motion to dismiss baseless causes of action with prejudice pursuant to rule 91a. Additionally, (1) the trial court judge, Judge Ken Tapscott, denied a motion by Drake to recuse him, and (2) Regional Administrative Judge Mary Murphy denied several motions by Drake to recuse Judge Tonya Parker, who was assigned to hear Drake's

tion and erred in failing to respond to the Appellant's motions to continue, and by

wrongfully denying the Appellant's reinstate [sic] and for new trial.

recusal motion respecting Judge Tapscott. Drake appealed those rulings in this Court. *See Drake v. Walker*, No. 05-14-00355-CV, 2015 WL 2160565 (Tex. App.—Dallas May 8, 2015, no pet.) (mem. op.). This Court affirmed the denial of the recusals requested by Drake and the dismissal of his claim for deceptive trade practices, but concluded the trial court erred by granting appellees' rule 91a motion to dismiss Drake's negligence claim. Accordingly, this Court reversed, in part, the trial court's March 19, 2014 order and remanded this case to the trial court.

On May 14, 2015, Drake served an expert report on appellees. Additionally, Drake filed a May 26, 2015 "emergency motion" to compel discovery. Appellees filed objections to the sufficiency of Drake's expert report on June 1, 2015, asserting the report was "not a good faith effort as to defendants" and should be stricken.

The mandate in the appeal described above was issued on July 20, 2015. On July 27, 2015, the trial court granted a motion by appellees for substitution of counsel. Also, on that same date, the trial court held a hearing on appellees' March 11, 2014 motion to dismiss. At that hearing, the trial court denied a request by Drake that his motion to compel discovery be heard before appellees' motion to dismiss. Further, as to the motion to dismiss, the trial court stated to Drake, "This motion to dismiss is based on one issue. Okay? It is the failure to file an expert report and serve them with an expert report within 120 days of the filing of a healthcare liability claim." Appellees contended section 74.351(a)'s 120-day deadline for serving an expert report was triggered by the filing of Drake's Rule 202 proceeding and therefore Drake's expert report was not timely served. Drake argued his expert report was timely served because (1) a Rule 202

petition does not trigger the 120-day statutory deadline and (2) the 120-day time period was triggered by the filing of appellees' answers in this case on December 30, 2013, and January 8, 2014, and "stopped with the dismissal and during the time the matter was on appeal."

On July 31, 2015, Drake filed a motion to recuse Judges Tapscott and Murphy. In that motion, Drake stated in part,

> Tapscott is trying to dismiss the Plaintiff's case to assist the "white" doctors and their "white" attorneys. Tapscott has been abusive, unfair, and discriminative toward the Plaintiff. The defendant's attorneys do not argue that the Plaintiff did not file his expert report before the mandate was issued—thus, an impartial judge would grant the Plaintiff's motion to compel [discovery]. But racism will not allow Tapscott to do so. . . . This type of behavior demands that Tapscott be recused.
>
> . . . .
>
> . . . Plaintiff also believes that Tapscott has conspired with the white attorneys and their clients against the Plaintiff. Plaintiff believes that Tapscott and Mary Murphy is [sic] racially motivated against him.

Further, Drake complained Judge Tapscott (1) "had concluded that the Plaintiff was incapable of proving his case," (2) "allowed the defense—who wasn't properly before the Court [sic] to continue to argue the case," and (3) "is actively preventing the Plaintiff from conducting discovery, because this is what the defense desires."

In an order dated August 3, 2015, Judge Tapscott declined to recuse himself. Subsequently, Drake filed a September 17, 2015 amended motion to recuse Judge Tapscott that was substantially similar to the July 31, 2015 motion to recuse described above. Drake's amended motion to recuse was

denied by Judge Murphy on November 4, 2015.

On November 6, 2015, Drake filed a "second" motion to recuse Judges Tapscott and Murphy, which motion was substantially similar to Drake's motions to recuse described above. Further, Drake contended that an additional reason for the recusal of Judge Tapscott is that "the judge is a defendant in a lawsuit with the Plaintiff." In an affidavit attached to that motion, Drake stated in part,

> The judge in the above styled cause of action, William Tapscott Jr., has been bias [sic] toward the Plaintiff. The Plaintiff filed a lawsuit in Wichita Falls, Texas federal court, cause number: 7:15-CV_141, requesting an injunction against Tapscott for his abusive, and prejudice ways.... The Plaintiff in the above styled and numbered cause of action is the "plaintiff" in the lawsuit against Judge Tapscott.

Drake's November 6, 2015 "second" motion to recuse was assigned to Judge Kelly Moore and was denied by Judge Moore on December 18, 2015.

Drake filed a substantially similar "amended second motion" to recuse Judges Tapscott and Murphy on December 22, 2015, and, in addition, continued to assert his same objections to Judge Tapscott's hearing this case in motions filed for other purposes. Drake's "amended second motion" to recuse was denied on January 14, 2016, and Judge Tapscott signed additional orders declining to recuse himself on February 8, 2016; March 30, 2016; and April 4, 2016.

A second hearing on appellees' motion to dismiss for failure to provide an expert report was held on February 15, 2016. Drake did not appear at that hearing. At the start of the hearing, the trial court stated in part "[w]e're not going to go into the merits of the motion now" and "[t]he purpose of the oral part of this hearing and the record is that ... Counsel would like to prove up their attorney's fees and costs." Then, appellees' attorney testified as to his attorney's fees. On that same date, the trial court signed an order in which it dismissed this lawsuit for "failure to provide expert report" and awarded attorney's fees to appellees "as mandated by § 74.351" in the amount of $15,374.50.

Drake filed a March 8, 2016 "Verified Motion to Reinstate and for New Trial and to Amend Pleadings to Add Defendant Tapscott." Following a March 21, 2016 hearing, that motion was denied on April 4, 2016. This appeal timely followed.[2]

## II. DRAKE'S PRE-SUBMISSION MOTION TO STRIKE

 As a preliminary matter, before considering Drake's issues, we address a pending pre-submission motion to strike filed by Drake in this appeal. Following the complained-of February 15, 2016 order in this case, appellees sent a March 30, 2016 letter to the trial court clerk in which they described several "relevant" items omitted from Drake's list of documents to

---

2. Additionally, Drake filed an April 4, 2016 document titled "Plaintiff's Amendment of His Original Petition." That amendment was struck by the trial court on that same date. Subsequently, the trial court signed an April 5, 2016 "Order to Show Cause" in which it (1) notified Drake that, in light of his status as a previously-declared vexatious litigant, the filing of his amended petition constituted "initiating new litigation in violation of court order," and (2) ordered Drake to appear on April 25, 2016, to show cause why he should not be held in contempt of court for failing to comply with the established requirements he must satisfy to proceed with litigation in Texas. Further, in an amended order to show cause dated June 6, 2016, the trial court changed the date of the show cause hearing to August 1, 2016.

be included in the appellate record and asked that those items be included in the clerk's record in this Court. Those omitted items included, in part, the petition, answer, and motion for nonsuit in trial court cause number CC-11-08852-D, i.e., the Rule 202 proceeding.

On April 22, 2016, Drake filed in this Court a "Motion to Transfer Older Case Records to the New Appeal Case Records." In that motion, Drake asked this Court to "transfer" to this appeal "all of the trial court records" from the Rule 202 proceeding and the prior appeal described above. Specifically, Drake stated in part "[a] substantial part of the argument made by the Appellees is that the filing of a Rule 202 by Drake on December 29, 2011 triggered the 120-day deadline to file his expert report" and "[i]t is imperative that Drake be able to point to the Rule 202 proceedings, documents filed, and the dates documents were filed to show the Court how these proceedings should not be used in calculating the 120-day deadline for an expert report to be filed on the health care provider."

In an order dated May 5, 2016, this Court granted Drake's request to transfer records from the prior appeal described above, but denied his request to transfer records from the Rule 202 proceeding. Specifically, this Court stated in part, "Appellant did not file an appeal from trial court cause number CC-11-08852-D. Therefore, we **DENY** appellant's motion as it relates to that case." (emphasis original).

The clerk's record in this case was filed on August 8, 2016. On December 30, 2016, while submission of this appeal was pending, appellees requested a supplemental clerk's record in this appeal. Among the documents appellees requested to be included in that supplemental clerk's record were the petition, answer, and motion for nonsuit in the Rule 202 proceeding. That supplemental clerk's record was filed on January 18, 2017.

On January 13, 2017, Drake filed a pre-submission motion in this Court in which he requested that this Court strike any records from, or references to, the Rule 202 proceeding in this appeal. Specifically, Drake stated in part,

This Court ruled on May 5, 2016 that cause number CC-11-08852-D is not related to the above appeal. . . .

Because this Court has already ruled on whether or not cause number CC-11-08852-D is relevant to the above suit, Appellant respectfully request [sic] that the Court act without delay and strike cause number CC-11-08852-D from the trial court's record, and strike from the Appellees brief any reference to cause number CC-11-08852-D or the Rule 202 the Appellant filed for presuit depositions of defendants.

Appellees filed a January 23, 2017 response in which they stated in part (1) this Court's order denying Drake's motion to transfer "did not state that trial court cause number CC-11-08852-D is irrelevant to this appeal"; (2) Drake made a "conclusory assumption" that the denial of his motion to transfer was based on lack of relevance "without ruling out other reasons for the denial of his request"; (3) a possible reason for the denial of Drake's motion to transfer is that his request "for all papers filed in that case be [sic] included in the records in this appeal" was "improper under the Texas Rules of Appellate Procedure and under Texas case law" because it was "impermissibly vague"; (4) appellees "have always contended that Appellant's filing of his Rule 202 petition started the countdown clock on his 120-day deadline for filing an expert report against each Appellee"; and (5) appellees properly requested "specific, and limited, documents" that should be considered by this

Court when determining whether Drake failed to serve an expert report prior to the expiration of the statutory deadline.

Texas Rule of Appellate Procedure 34.5(b) provides in part,

(1) Time for Request. At any time before the clerk's record is prepared, any party may file with the trial court clerk a written designation specifying items to be included in the record.

(2) Request Must Be Specific. A party requesting that an item be included in the clerk's record must specifically describe the item so that the clerk can readily identify it. The clerk will disregard a general designation, such as one for "all papers filed in the case."

TEX. R. APP. P. 34.5(b)(1)–(2). Further, Texas Rule of Appellate Procedure 34.5(c) states, "If a relevant item has been omitted from the clerk's record, the trial court, the appellate court, or any party may by letter direct the trial court clerk to prepare, certify, and file in the appellate court a supplement containing the omitted item." TEX. R. APP. P. 34.5(c).

We disagree with Drake's position that this Court's May 5, 2016 order constituted a ruling as to whether the Rule 202 proceeding was "relevant" or "related" to this appeal. Those matters were not addressed in the order. Further, the order does not contain any language that would preclude the supplementation of the clerk's record with the specific documents from the Rule 202 proceeding requested by appellees. *See* TEX. R. APP. P. 34.5(b)–(c).

We deny Drake's January 13, 2017 motion to strike.

### III. DRAKE'S ISSUES

#### A. *Granting of Appellees' Motion to Dismiss*

##### 1. Standard of Review

■ We review a trial court's decision on a motion to dismiss a case for failure to comply with section 74.351 for an abuse of discretion. *See TTHR Ltd. P'ship v. Moreno*, 401 S.W.3d 41, 44 (Tex. 2013); *Jelinek v. Casas*, 328 S.W.3d 526, 538–39 (Tex. 2010); *Senior Care Ctrs., LLC v. Shelton*, 459 S.W.3d 753, 756 (Tex. App.—Dallas 2015, no pet.). A trial court abuses its discretion if it acts in an arbitrary or unreasonable manner or without reference to any guiding rules or principles. *See Walker v. Gutierrez*, 111 S.W.3d 56, 63 (Tex. 2003). To the extent that resolution of the issue before the trial court requires interpretation of the statute itself, we apply a de novo standard. *See Van Ness v. ETMC First Physicians*, 461 S.W.3d 140, 142 (Tex. 2015); *Tex. W. Oaks Hosp., LP v. Williams*, 371 S.W.3d 171, 177 (Tex. 2012); *Fudge v. Wall*, 308 S.W.3d 458, 460 (Tex. App.—Dallas 2010, no pet.).

##### 2. Applicable Law

"Health care liability claim" means "a cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care, which proximately results in injury to or death of a claimant, whether the claimant's claim or cause of action sounds in tort or contract." TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(13). Section 74.351(a) provides in part that "[i]n a health care liability claim, a claimant shall, not later than the 120th day after the date each defendant's original answer is filed, serve on that party or the party's attorney one or more expert reports, with a curriculum vitae of each expert listed in the report for each physician or health care provider against whom a liability

claim is asserted."[3] *Id.* § 74.351(a). If an expert report is not timely served, the trial court must, on the defendant's motion, dismiss the health care liability claims with prejudice and award the defendant its reasonable attorney's fees and costs of court. *Id.* § 74.351(b).

"The aim of statutory construction is to determine and give effect to the Legislature's intent, which is generally reflected in the statute's plain language." *Zanchi v. Lane,* 408 S.W.3d 373, 376 (Tex. 2013) (quoting *CHCA Woman's Hosp., L.P. v. Lidji,* 403 S.W.3d 228, 231 (Tex. 2013)). "A word's meaning cannot be determined in isolation, but must be drawn from the context in which it is used." *Id.* "Where statutory text is clear, that text is determinative of legislative intent unless the plain meaning of the statute's words would produce an absurd result." *Hebner v. Reddy,* 498 S.W.3d 37, 41 (Tex. 2016) (quoting *Tex. Mut. Ins. Co. v. Ruttiger,* 381 S.W.3d 430, 452 (Tex. 2012)).

Texas Rule of Civil Procedure 202.1 provides, "A person may petition the court for an order authorizing the taking of a deposition on oral examination or written questions either: (a) to perpetuate or obtain the person's own testimony or that of any other person for use in an anticipated suit; or (b) to investigate a potential claim or suit." Tex. R. Civ. P. 202.1.

### 3. Application of Law to Facts

We begin by addressing together Drake's fourth and seventh issues, in which he states, respectively, "[w]hether or not the Appellant filed his Expert Report timely" and "[w]hether or not the trial court abused its discretion and erred in dismissing the Appellant [sic] claim against the Appellees for failure to file an Expert Report. Appellees objection to Drake's expert report should be overruled." Specifically, Drake argues (1) filing a Rule 202 petition does not trigger the 120-day period for serving an expert report described in section 74.351(a); (2) rather, that 120-day period was triggered by the filing of appellees' answers in this case on December 30, 2013, and January 8, 2014; (3) additionally, the 120-day period was tolled from March 19, 2014—i.e., the date of the previous dismissal by the trial court—until at least May 8, 2015, when this Court issued its opinion in the previous appeal, and arguably until the mandate in the previous appeal was issued on July 20, 2015; (4) therefore, his May 14, 2015 expert report was timely served; and (5) that expert report is not deficient because it addresses each of the matters required by section 74.351. In support of his position that the 120-day deadline was not triggered by the Rule 202 proceeding, Drake cites *In re Raja,* 216 S.W.3d 404, 408 (Tex. App.—Eastland 2006, pet. denied). Further, as to his tolling argument, Drake acknowledges there is no case law directly on point, but asserts this Court should analogize to cases that allow tolling of the 120-day period in section 74.351(a) when a plaintiff nonsuits or a defendant fails to timely file an answer. Specifically, Drake cites *CHCA Woman's Hospital,* 403 S.W.3d at 232–34, and *Gardner v. U.S. Imaging, Inc.,* 274 S.W.3d 669, 671 (Tex. 2008).

Appellees respond that the filing of the December 29, 2011 Rule 202 proceeding triggered the 120-day period in which Drake was required to serve his expert

---

**3.** Prior to September 1, 2013, that section provided that each required expert report was to be served "not later than the 120th day after the date the original petition was filed." *See* Act of June 17, 2005, 79th Leg., R.S., ch. 635, 2005 Tex. Gen. Laws 1590 (amended 2013) (current version at Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a)). The pre-2013 version of that section was otherwise identical to the current provision described above. *See id.; Zanchi v. Lane,* 408 S.W.3d 373, 379, n.2 (Tex. 2013).

report and the report was therefore due on March 10, 2014.[4] Appellees contend *In re Jorden*, 249 S.W.3d 416 (Tex. 2008), supports their position.

In *Raja*, a former patient of Dr. Pill Raja filed a request to take Raja's deposition pursuant to Rule 202 to investigate a potential health care liability claim. *Raja*, 216 S.W.3d at 405. The trial court granted the patient's request and Raja then sought mandamus relief in the Eleventh Court of Appeals in Eastland. *Id.* The court of appeals addressed the issue of whether section 74.351(s), which prevents "discovery in a health care liability claim" until an expert report is filed, precludes Rule 202 discovery. *Id.* at 406. In its analysis, the court of appeals noted that the Twelfth Court of Appeals in Tyler had concluded "one may take a Rule 202 deposition of a doctor to investigate a potential medical malpractice action against that doctor." *Id.* at 407. However, the Eastland Court of Appeals disagreed with that position. *Id.* Specifically, the Eastland Court of Appeals stated in part,

> The Tyler Court found that a Rule 202 proceeding was not subject to the report requirement because a potential cause of action was not a health care liability claim as defined by Section 74.001(13). We agree that a potential claim is not a health care liability claim and, therefore, that merely requesting a Rule 202 deposition does not trigger Section 74.351(a)'s 120–day deadline. But, to then conclude that no provision of Section 74.351 is applicable to a Rule 202 proceeding against a potential medical malpractice defendant is contrary to the statute's language and the legislature's stated findings and purpose.

*Id.* at 408 (emphasis added). The Eastland Court of Appeals concluded the language of section 74.351 precluded the patient from taking Raja's deposition before the serving of an expert report. *Id.* at 409.

Two years later, in *Jorden*, the supreme court addressed a split of authority in the courts of appeals as to whether section 74.351(s) applies to presuit depositions authorized by Rule 202. *Jorden*, 249 S.W.3d at 418. *Raja* was cited, but not otherwise discussed, in a footnote describing the split. *See id.* at 419 n.4. The supreme court concluded, "Because the statute prohibits 'all discovery' other than three exceptions—and Rule 202 depositions are not listed among them—we hold the statute prohibits such depositions until after an expert report is served." *Id.* at 418, 424. In reaching that conclusion, the supreme court quoted the statutory definition of "health care liability claim" described above and stated in part "[n]othing in this definition limits 'health care liability claim' to filed suits; instead, it extends coverage to 'a cause of action.' " *Id.* at 421. Additionally, the supreme court stated in its analysis,

> Because the statute here specifically applies to "a cause of action against a health care provider," it applies both before and after such a cause of action is filed. To the extent a presuit deposition is intended to investigate a potential claim against a health-care provider, it is necessarily a "health care liability claim" and falls within coverage of section 74.351(s).

*Id.* at 422.

■ In the case before us, appellees argue that, based on the language in *Jor-*

---

4. Appellees contend Drake's expert report was untimely under both the pre-2013 and current versions of the statute. Specifically, appellees assert that under the current version, the deadline to serve an expert report on

Goldberg would have expired on March 31, 2014, and the deadline to serve an expert report on Walker would have expired on April 9, 2014.

*den* described above, "a Rule 202 petition is the commencing of an action against a health care provider" and therefore Drake's 120-day time period for serving an expert report began to run on December 29, 2011, when he filed the Rule 202 proceeding. However, *Jorden* did not specifically address the question of whether a Rule 202 proceeding triggers the expert report deadline of section 74.351(a). Further, the supreme court in *Jorden* focused its analysis on the specific language in the applicable provisions of Chapter 74, particularly section 74.351(s). *See id.* at 420–22. Unlike section 74.351(s), section 74.351(a) states in part that a claimant is required to serve an expert report within the proper time period "with a curriculum vitae of each expert listed in the report for each physician or health care provider against whom a liability claim is asserted" (emphasis added). TEX. CIV. PRAC. & REM. CODE ANN.§ 74.351(a). This Court has stated that a Rule 202 proceeding "is not a separate, independent lawsuit, but is in aid of and incident to an anticipated suit." *Lee v. GST Transp. Sys., LP*, 334 S.W.3d 16, 19 (Tex. App.—Dallas 2008, pet. denied). Thus, in a proceeding pursuant to Rule 202, it is not clear that a claimant would necessarily be aware, at the time of filing a Rule 202 petition, against whom his health care liability claim "is asserted." CIV. PRAC. & REM. § 74.351(a). We disagree with appellees' position that *Jorden* resolved the issue of whether a Rule 202 proceeding triggers the 120-day time period for serving an expert report. Further, we conclude appellees' position that the 120-day time period is triggered by a Rule 202 proceeding is inconsistent with the plain language of section 74.351(a), which describes requirements pertaining to "each physician or health care provider against whom a liability claim is asserted" (emphasis added). *See id.*

Next, we address Drake's argument that the 120-day time period for serving his expert report was tolled from March 19, 2014—i.e., the date of the previous dismissal by the trial court—until at least May 8, 2015, when this Court issued its opinion in the previous appeal, and arguably until the mandate in the previous appeal was issued on July 20, 2015. Appellees do not specifically address that argument on appeal.

In *CHCA Woman's Hospital*, the supreme court concluded that the nonsuiting of a health care liability claim before the expiration of the 120-day period for serving an expert report tolled the period until the lawsuit was refiled. *CHCA Woman's Hosp.*, 403 S.W.3d at 233. Specifically, the supreme court stated in part as follows:

> Tolling the expert-report period both protects a claimant's absolute right to nonsuit and is consistent with the statute's overall structure. To that end, we agree with [appellees] that the various provisions of the TMLA's expert-report requirement, construed together, demonstrate legislative intent that the expert report be provided within the context of pending litigation.... Construing the TMLA to require service of an expert report in the absence of a pending lawsuit would thus give rise to a host of procedural complications that the statute does not envision and cannot adequately address. We decline to attribute such intent to the Legislature without a clear expression of it in the statute's language.

*Id.* Additionally, in *Gardner*, the supreme court addressed tolling of that 120-day time period in the context of a default judgment. *Gardner*, 274 S.W.3d at 671. The supreme court stated in part, "In light of the expert-report requirement's dual purpose to inform the served party of the conduct called into question and to provide

a basis for the trial court to conclude that the plaintiff's claims have merit, it makes little sense to require service of an expert report on a party who by default has admitted the plaintiff's allegations." *Id.*

In the case before us, in light of the March 19, 2014 dismissal with prejudice pursuant to rule 91a described above, appellees have not articulated a purpose, nor can we conceive of one on this record, that would exist for requiring an expert report to be served between that date and the resolution of the resulting appeal. *See id.* Further, the filing of Drake's expert report during the time the case was on appeal would presumably have triggered the 21-day deadline in section 74.351(a) for appellees to object to the expert report. *See* Civ. Prac. & Rem. § 74.351(a). Therefore, appellees would have been required to object to an expert report in a case that was dismissed with prejudice and pending on appeal or risk waiving their objections. *See id.* Nothing in the statute shows that "procedural complication" was intended by the statute. *See id.*; *CHCA Woman's Hosp.*, 403 S.W.3d at 233. We conclude the 120-day time period for filing an expert report in this case was tolled from March 19, 2014, until at least May 8, 2015, when this Court issued its opinion in the previous appeal.[5] *See CHCA Woman's Hosp.*, 403 S.W.3d at 233; *Gardner*, 274 S.W.3d at 671.

The record shows (1) Drake filed this case on December 3, 2013; (2) Goldberg and Walker filed separate general denial answers dated, respectively, December 30, 2013, and January 8, 2014; (3) on March 19, 2014, the trial court granted appellees' motion to dismiss baseless causes of action pursuant to rule 91a with prejudice; (4) this Court issued its opinion in the previous appeal on May 8, 2015; and (5) Drake served an expert report on appellees on May 14, 2015. On this record, we conclude Drake's expert report was timely served pursuant to section 74.351(a).[6] *See* Civ. Prac. & Rem. § 74.351(a). Accordingly, we conclude the trial court erred by granting appellees' motion to dismiss for failure to provide an expert report.

Additionally, Drake asserts in his seventh issue that his expert report is not deficient because it addresses each of the matters required by section 74.351. *See id.* § 74.351. The record does not show the trial court held a hearing or ruled on the adequacy of the expert report filed by Drake. *See id.* § 74.351(*l*) ("A court shall grant a motion challenging the adequacy of an expert report only if it appears to the court, after hearing, that the report does not represent an objective good faith effort to comply with the definition of an expert report in Subsection (r)(6) [of section 74.351]."). Therefore, Drake's argument respecting the adequacy of his expert report presents nothing for this Court's review. *See* Tex. R. App. P. 33.1.

We decide in favor of Drake on his fourth issue and the portion of his seventh

---

5. We need not address whether the 120-day time period was tolled until July 20, 2015, because that determination would not affect the resolution of Drake's issues in this appeal. *See* Tex. R. App. P. 47.1.

6. Specifically, (1) from December 30, 2013, to March 19, 2014, is 79 days; (2) from May 8, 2015, to May 14, 2015, is 6 days; and (3) 79 days + 6 days = 85 days. As described above, prior to September 1, 2013, section 74.351(a) provided that each required expert report was to be served "not later than the 120th day after the date the original petition was filed." *See Zanchi*, 408 S.W.3d at 379, n.2. We note that even if the 120-day time period is calculated from the date this case was filed, Drake's expert report was timely served. Specifically, (1) from December 3, 2013, to March 19, 2014, is 106 days; (2) from May 8, 2015, to May 14, 2015, is 6 days; and (3) 106 days + 6 days = 112 days.

issue in which he complains appellees' calculations respecting the deadline for serving his expert report are incorrect. Additionally, in light of our conclusions above, we decide in favor of Drake on the portion of his second issue in which he complains the trial court erred by awarding appellees attorney's fees based on section 74.351 and the portion of his eighth issue in which he complains of the trial court's denial of his motion to reinstate and for new trial based on the timeliness of his expert report. Further, we need not address Drake's first and third issues or the remaining portions of his second and eighth issues, all of which pertain to complaints respecting the granting of appellees' motion to dismiss for failure to provide an expert report, the attorney's fees awarded to appellees, and/or hearings respecting those matters.

### B. Due Process Violations and Recusal of Trial Court Judge

#### 1. Standard of Review and Applicable Law

■ We review an order denying a motion to recuse for an abuse of discretion. *See In re H.M.S.*, 349 S.W.3d 250, 253 (Tex. App.—Dallas 2011, pet. denied); *Sommers v. Concepcion*, 20 S.W.3d 27, 41 (Tex. App.—Houston [14th Dist.] 2000, pet. denied); *see also* Tex. R. Civ. P. 18a(j)(1). The movant bears the burden of proving recusal is warranted, and the burden is met only through a showing of bias or impartiality to such an extent that the movant was deprived of a fair trial. *See In re H.M.S.*, 349 S.W.3d at 253–54. The test for recusal is "whether a reasonable member of the public at large, knowing all the facts in the public domain concerning the judge's conduct, would have a reasonable doubt that the judge is actually impartial." *Hansen v. JP Morgan Chase Bank, N.A.,* 346 S.W.3d 769, 776 (Tex. App.—Dallas 2011, no pet.).

■ Pursuant to Texas Rule of Civil Procedure 18a, a motion to recuse a judge "must not be based solely on the judge's rulings in the case" and "must assert one or more of the grounds listed in Rule 18b." Tex. R. Civ. P. 18a. Rule 18b provides in part that a judge must recuse in any proceeding in which (1) "the judge's impartiality might reasonably be questioned"; (2) "the judge has a personal bias or prejudice concerning the subject matter or a party"; (3) the judge knows that he has an "interest that could be substantially affected by the outcome of the proceeding"; or (4) the judge "is to the judge's knowledge likely to be a material witness in the proceeding." Tex. R. Civ. P. 18b(b)(1), (2), (6), (7). Bias by an adjudicator is not lightly established. *In re City of Dallas*, 445 S.W.3d 456, 467 (Tex. App.—Dallas 2014, orig. proceeding). Judicial rulings alone almost never constitute a valid basis for a motion to recuse based on bias or partiality. *In re H.M.S.*, 349 S.W.3d at 253 (citing *Liteky v. United States*, 510 U.S. 540, 555, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994)). Rather, a party's remedy for unfair rulings is to assign error regarding the adverse rulings. *In re City of Dallas*, 445 S.W.3d at 467; *Sommers*, 20 S.W.3d at 41. Judicial remarks, even those that are critical or disapproving of, or even hostile to, parties or their cases, do not ordinarily support a bias or partiality challenge. *Hansen*, 346 S.W.3d at 776. Further, "a party cannot create a constitutional disqualification by filing suit against the judge." *Spigener v. Wallis*, 80 S.W.3d 174, 181 (Tex. App.—Waco 2002, no pet.). "To hold that merely naming a judge as a party would disqualify him would put power in the hands of litigants to frustrate our judicial system." *Cameron v. Greenhill*, 582 S.W.2d 775, 776 (Tex. 1979).

## 2. Application of Law to Facts

■ In his fifth issue, Drake (1) contends "[t]he trial court violated Appellant's due process rights and was unreasonably biased and unfair to Drake" and (2) asserts an "objection" to having Judge Parker or Judge Murphy sign orders in this case "based on [Drake's] religious beliefs and because he is a Christian minister." In the section of his argument pertaining to the first of those complaints, Drake describes efforts by him to conduct discovery and obtain a hearing on his motion to compel discovery described above. Specifically, Drake complains (1) the "Board of Dental Examiners in Austin, Texas" refused to provide information requested by him; (2) he "was barred from this critical information because of the racial bigotry of the Texas Attorney General towards pro se nonwhites in general, which violated his due process rights"; (3) "the trial court judge was the last person who would assist the Appellant in obtaining the documents he sought"; and (4) the trial court allowed appellees to argue their motion to dismiss prior to allowing argument on Drake's motion to compel discovery, which was a "violation of the Appellant's due process rights," a "way for the trial court to prevent the Appellant from bringing his motion before the court," and a "violation of the Appellant's civil and constitutional rights." Drake cites no authority to support his contentions respecting the "bias" and violations of his rights alleged by him. *See* TEX. R. APP. P. 38.1(i). Consequently, we conclude the first portion of Drake's fifth issue presents nothing for this Court's review. *See id.*; *see also Birnbaum v. Law Offices of G. David Westfall, P.C.*, 120 S.W.3d 470, 477 (Tex. App.—Dallas 2003, pet. denied) (concluding "due process" complaint asserted without citation to authority presented nothing for review).

In the section of his argument pertaining to the second portion of his fifth issue, Drake asserts that the participation of Judges Parker and Murphy in this case "is offensive to him" and he should not be "forced" to have them "make any decisions over [him]." Further, he contends "[t]here is no dispute that Drake's beliefs are founded on basic tenets of the Christian religion, as he understands them, and derived in substantial part from his devotion to the Almighty as the Supreme Being" and "[t]hus, under the U.S. Supreme Court's decision in *United States v. Seeger*, 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed.2d 733 (1965), the Appellant's position unquestionably was within the 'religious training and belief clause' of the exemption provision." In addition to that authority, Drake cites generally to *Welsh v. United States*, 398 U.S. 333, 90 S.Ct. 1792, 26 L.Ed.2d 308 (1970). Both cases cited by Drake pertain to "conscientious objector" status under the Universal Military Training and Service Act, which act exempts from combatant training and service in the armed forces of the United States certain persons who by reason of their religious training and belief are conscientiously opposed to participation in war in any form. *See Welsh*, 398 U.S. at 335, 90 S.Ct. 1792; *Seeger*, 380 U.S. at 165, 85 S.Ct. 850. Drake does not explain, and the record does not show, how that statute is applicable in this case. Nor does the record show Drake asserted an argument in the trial court based on the military "exemption provision" he describes. On this record, we conclude the second portion of Drake's fifth issue presents nothing for this Court's review. *See* TEX. R. APP. P. 33.1, 38.1(i).

We decide against Drake on his fifth issue.

■ In his sixth issue, Drake contends (1) Judge Tapscott "should have recused himself from Drake's case because he was

a defendant in a pending federal lawsuit where Drake was the 'plaintiff'" and (2) Judge Murphy and Judge Moore "abused their discretions by denying Appellant's motions to recuse Judge Tapscott."[7] According to Drake, "[a] judge should not be a defendant or a material witness in a legal proceeding or litigation of any kind with a party, which he is also presently presiding over" and "[s]ubstantial evidence proves to the Court that the trial court judge was bias [sic] towards Drake." Appellees respond in part "[t]he record contains no evidence of bias or prejudice on the part of the trial court" and "naming a judge in a lawsuit is insufficient to create disqualification."

We disagree with Drake's position that Judge Tapscott was required to recuse himself in this case because he "was a defendant in a pending federal lawsuit where Drake was the 'plaintiff.'" *See Cameron*, 582 S.W.2d at 776; *Spigener*, 80 S.W.3d at 181. Also, Drake cites no authority, and we have found none, to support his position that a trial judge must recuse himself when a plaintiff seeking recusal files a separate lawsuit against the judge in which the judge will allegedly be a "material witness." Further, the incident described by Drake in his appellate brief to show Judge Tapscott's alleged "degree

of antagonism against Drake" is an incident that occurred in January 2014 and was considered and rejected by this Court in Drake's previous appeal as a ground for recusal of Judge Tapscott. *See Drake*, 2015 WL 2160565, at *6. On this record, we conclude Judge Tapscott did not abuse his discretion by declining to recuse himself in this case. Additionally, in light of that conclusion, we conclude Judge Murphy's and Judge Moore's denials of Drake's motions to recuse Judge Tapscott did not constitute abuse of discretion.[8] *See Cameron*, 582 S.W.2d at 776; *Spigener*, 80 S.W.3d at 181; *see also Drake*, 2015 WL 2160565, at *6.

Drake's sixth issue is decided against him.

## IV. CONCLUSION

We decide in favor of Drake on (1) his fourth issue, (2) the portion of his seventh issue in which he complains appellees' calculations respecting the deadline for serving his expert report are incorrect, (3) the portion of his second issue in which he complains the trial court erred by awarding appellees attorney's fees based on section 74.351, and (4) the portion of his eighth issue in which he complains of the trial court's denial of his motion to reinstate and for new trial based on the timeli-

7. Additionally, Drake's argument pertaining to his sixth issue addresses matters other than recusal, including lengthy sections titled (1) "Trial court's abuse of Chapter 11 of the TCPRC" and (2) "The trial court's actions make its own show cause order moot." Those sections contain complaints pertaining to the striking of the April 4, 2016 "Plaintiffs' Amendment of His Original Petition" described above and the trial court's subsequent show cause orders based on Drake's status as a vexatious litigant. To the extent Drake challenges the trial court's jurisdiction respecting the trial court's show cause orders, we disagree with Drake's position that the trial court lacked jurisdiction as to those orders. *See* Tex. Civ. Prac. & Rem. Code Ann. § 11.101(b) (West Supp. 2016) (vexatious liti-

gant who disobeys court order prohibiting new litigation is subject to contempt). Further, Drake's other complaints in those sections were not asserted by him in the trial court, nor does he explain how the authority cited by him supports his positions. *See* Tex. R. App. P. 33.1, 38.1(i).

8. To the extent Drake's appellate argument pertaining to his sixth issue can be construed to complain of a lack of a hearing respecting his motions to recuse that were denied by Judges Murphy and Moore, Drake cites no portion of the record, and we have found none, showing that complaint was preserved for this Court's review. *See* Tex. R. App. P. 33.1.

ness of his expert report. We decide against Drake on his fifth and sixth issues. We need not address Drake's first and third issues or the remaining portions of his second and eighth issues.

We reverse the trial court's order granting appellees' motion to dismiss for failure to provide an expert report and awarding attorney's fees to appellees pursuant to section 74.351, render judgment denying that motion to dismiss, and remand this case to the trial court for further proceedings consistent with this opinion.