**Opinion issued April 7, 2026**



**In The**

# Court of Appeals

**For The**

# First District of Texas

_____

**NO. 01-24-00271-CV**

_____

**IN THE INTEREST OF C.E.S., A CHILD**

**On Appeal from the 309th District Court**
**Harris County, Texas**
**Trial Court Case No. 2016-33379**

**MEMORANDUM OPINION**

A recusal motion normally stops the trial court's power to proceed until the motion receives a ruling, but Civil Practice and Remedies Code section 30.016 creates an exception for so-called tertiary recusal motions. That exception set off a chain of events leading to this appeal.

This appeal arises from a family law dispute in which appellee Carolyn Pena persuaded the trial court to modify a 2016 order in a suit affecting the parent-child relationship, such that she would now become the minor child's sole managing conservator. Over the course of time, appellant George E. Saldana filed several recusal motions in this lamentably acrimonious case, including one shortly before the trial setting on Pena's modification petition. The trial court denied that motion to recuse and proceeded to the modification trial before the regional presiding judge signed a written order denying the recusal motion. Ultimately, the trial court modified the 2016 order, named Pena as the child's sole managing conservator, and imposed significant restrictions on Saldana's visitation rights.

In three issues on appeal, Saldana contends that (1) the trial court erred by proceeding with the trial while the recusal motion was pending before the regional presiding judge; (2) he lacked adequate notice of the trial setting; and (3) the trial was fundamentally unfair because he was arrested for allegedly assaulting the court's bailiff immediately prior to trial, and his incarceration while court was not in session hampered his ability to prepare for trial.

We affirm.

## Background

Saldana has represented himself throughout the trial court proceedings and this appeal. Relevant matters started in the 257th District Court of Harris County,

where Saldana filed two recusal motions in October 2021. The trial judge declined to recuse herself voluntarily, and the regional presiding judge denied both recusal motions. Several months later, in June 2022, the trial judge voluntarily recused herself, writing: "There is no Motion to Recuse pending in this matter. However, there have been 2 prior recusal motions filed in this matter. Each has been ruled on and denied by the Presiding Judge of the Eleventh Administrative region."

The case moved to the 308th District Court of Harris County, where a year passed before the case was transferred again. The case finally landed in the 309th District Court.

As the case approached its preferential setting for the period of October 31 to November 14, 2023, Saldana filed another motion to recuse. The trial judge declined to recuse, and she put the case to a bench trial. Unfortunately, on the day trial was scheduled to begin, something occurred between Saldana and the court bailiff, which resulted in Saldana being jailed on charges of assaulting a public servant. Some of the events were outside the courtroom and thus necessarily not on the record, but some of them took place on the record. Specifically, when Saldana sought to stop the proceedings by citing his pending recusal motion, the judge explained that the tertiary recusal statute allowed the case to carry on.

Saldana maintains in his brief on appeal—apparently based on events either in the hallway or otherwise not taken down by the court reporter—that the recusal

motion must have offended the court bailiff, who retaliated by bringing a posse of fellow bailiffs to put on an aggressive show of force, culminating in Saldana being sent off to jail, which in turn made the ability to prepare for trial less than ideal.

After the trial, the trial court modified the 2016 custody order. The court terminated joint managing conservatorship, named Pena as sole managing conservator, and imposed various restrictions on Saldana, including a requirement that all his visitation with the child be supervised. Saldana then moved for a new trial, contending that (1) the trial was void because of his recusal motion pending before the regional presiding judge; (2) he lacked adequate notice of the trial that began on November 14, 2023; and (3) the trial was generally unfair, largely due to his arrest, which hampered his ability to prepare for trial and present his defense to Pena's modification petition.

Saldana explains his claim of an unfair trial as follows in his appellate brief, where he gives his version of the first day of trial:

> On November 14, 2023, Mr. Saldana was arrested and charged with Assault on a Peace Officer (Bailiff Alderete) involving bodily injury. Subsequent to his arrest, he was placed in handcuffs and transported to Harris County Jail with a $40,000 bond. Mr. Saldana [w]as found to be indigent and could not afford bail for this alleged serious crime. This procedural failure severely undermines the Appellant's ability to adequately prepare for trial while incarcerated for an offense he maintains he did not commit.
>
> While awaiting his appearance before the magistrate judge, Mr. Saldana was informed that he would be bench-warranted back to the 309th District Court . . . .

4

At this point, Mr. Saldana's liberty was severely restricted, compelling him to participate in judicial proceedings under duress and without legal counsel. He was returned to the 309th District Court on November 15, 2023, where he faced the same Bailiff Alderete, who had filed the assault allegation against him just one day prior. Despite expressing his disagreement with the proceedings, Mr. Saldana felt he had no choice but to comply, given the authority exerted by the Harris County Sheriff's Office.

****

Mr. Saldana was mandated by bench warrant to participate in legal proceedings on November 15, 16, and 17. Throughout this period, he was escorted in handcuffs and shackles across various locations within the Harris County Courthouse, including restrooms, under the supervision of Bailiff Alderete. This treatment severely limited and intimidated Mr. Saldana's ability to prepare adequately for his trial, as he was unable to access his laptop bag, iPhones (X and 14), USB drives, notebooks, and court folders necessary for effective litigation.

These circumstances raise serious concerns regarding the violation of Mr. Saldana's rights and the integrity of the judicial process. We respectfully request that the court consider these factors as part of this appeal, as they directly impact the fairness of the proceedings and Mr. Saldana's ability to defend himself effectively.

We would summarize Pena's side of the story, were it not for the fact that she has not filed an appellate brief or otherwise appeared in this appeal. Other facts will appear as they become pertinent to the analysis of the issues on appeal.

## Recusal of Trial Court Judge

In his first issue, Saldana contends that a pending recusal motion obligated the trial court to stand down until the regional presiding judge ruled on the motion. He filed a recusal motion before trial, but the trial court went ahead with the trial anyway, which the recusal rule generally forbids. *See* TEX. R. CIV. P. 18a(f)(2)(A)

("If a motion is filed before evidence has been offered at trial, the respondent judge must take no further action in the case until the motion has been decided, except for good cause stated in writing or on the record."); *In re Rio Grande Valley Gas Co.*, 987 S.W.2d 167, 179 (Tex. App.—Corpus Christi–Edinburg 1999, orig. proceeding) ("Any order other than an order of recusal or referral, entered by a court after a proper motion to recuse is entered is void."). Thus, Saldana concludes that the trial occurred during a time when the trial court had no jurisdiction.

This argument would have more traction were it not for the statute governing "tertiary recusal motions." *See* TEX. CIV. PRAC. & REM. CODE § 30.016(a) (defining "tertiary recusal motion" as "a third or subsequent motion for recusal or disqualification filed against a district court . . . by the same party in a case"). Under this statute—essentially a three strikes provision—a judge who faces a "tertiary recusal motion" may move ahead to final disposition anyway. *Id.* § 30.016(b) (providing that judge who declines to recuse after filing of tertiary recusal motion "shall comply with applicable rules of procedure for recusal and disqualification," but judge "shall continue" to preside over case, sign orders in case, and "move the case to final disposition as though a tertiary recusal motion had not been filed"). The denial of such a motion is then reviewed only on appeal after a final judgment. *Id.* § 30.016(d).

When trial began, Saldana argued that no trial should occur because he had filed a recusal motion and therefore the trial court "doesn't have jurisdiction right now." After taking judicial notice that Saldana had filed a recusal motion approximately two weeks before trial and the court had denied the motion, the trial court then read aloud from section 30.016 and expressed an intention to move forward "to final disposition as though the tertiary recusal motion has not been filed."

Saldana did not deny filing prior recusal motions against other judges, but he countered that he had not in fact filed three motions against this particular judge: "I have not filed three recusals towards you. . . . It says judge, it doesn't say judges." Thus, he now argues on appeal that he never "filed three separate recusals concerning a single district court or judge."

Saldana's argument runs afoul of Texas Supreme Court caselaw holding that "section 30.016 applies to a third recusal motion filed by the same party against *any* judge." *Gonzalez v. Guilbot*, 315 S.W.3d 533, 539–40 (Tex. 2010). Under *Gonzalez*, "a tertiary recusal motion is a third motion filed by the same party against any judge. That is, the word 'third' in section 30.016(a) refers to the motion, not to the judge." *Id.* at 541; *see Sibley v. Seminole Pipeline Co.*, No. 01-15-00775-CV, 2017 WL 491290, at *6 (Tex. App.—Houston [1st Dist.] Feb. 7, 2017, no pet.) (mem. op.) ("By its plain language, however, the statute regarding tertiary recusal motions

applies whenever a party has filed three or more recusal motions against any judge." (quotation omitted)).

This reading of the statute controls the analysis. Saldana filed several prior motions to recuse. He filed a recusal motion on October 11, 2021, which was denied by the 257th District Court on October 14, 2021, and by the regional presiding judge on October 15, 2021. He filed another one on October 19, 2021, which was denied by the 257th District Court on October 28, 2021, and by the regional presiding judge on November 22, 2021. Thus, by the time he filed the motion against the 309th District Court at issue in this appeal, dated October 27, 2023, he had already filed enough motions to recuse to make any ensuing motion subject to the tertiary recusal motion statute.

As a result, section 30.016(b) empowered the trial court to proceed with the case rather than standing down and waiting to see whether the regional presiding judge granted the motion. *See* TEX. CIV. PRAC. & REM. CODE § 30.016(b). We therefore conclude that the trial court had jurisdiction to conduct the trial beginning on November 14, 2023.

To the extent Saldana also argues that the regional presiding judge abused her discretion by denying his third recusal motion, we conclude that this complaint is not meritorious. Saldana argues that the regional presiding judge's order denying the recusal motion was erroneous because the order stated that the motion did not

8

comply with Rule 18a because it "complains *mainly* of the trial judge's rulings and actions in the case," but Rule 18a provides that a recusal motion "must not be based *solely* on the judge's rulings in the case." *See* TEX. R. CIV. P. 18a(a)(3) (emphasis added). He contends that his recusal motion "presented multiple issues that were not based solely on the judge's rulings," including concerns relating to alleged intimidation by the bailiff, a threat of arrest, and a statement by the trial court that Saldana's "constitutional rights were not intact in the 309th court."[1]

Even if the regional presiding judge's statement in its order was incorrect, Saldana has not demonstrated that the judge abused her discretion by denying his recusal motion. *See* TEX. R. CIV. P. 18a(j)(1)(A) ("An order denying a motion to recuse may be reviewed only for abuse of discretion on appeal from the final judgment."); *Drake v. Walker*, 529 S.W.3d 516, 528 (Tex. App.—Dallas 2017, no pet.) ("The movant bears the burden of proving recusal is warranted, and the burden is met only through a showing of bias or impartiality to such an extent that the movant was deprived of a fair trial."); *see also Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 240 (Tex. 2001) (per curiam) ("[J]udicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their

---

[1] In his recusal motion, Saldana argued that the trial court made the statement concerning his constitutional rights on August 23, 2023. No such statement by the trial court appears in the reporter's record of the August 23, 2023 hearing.

9

cases, ordinarily do not support a bias or partiality challenge." (quoting *Liteky v. United States*, 510 U.S. 540, 555 (1994))).

We overrule Saldana's first issue.

## Notice of Trial

In his second issue, Saldana contends that he received inadequate notice of the trial setting.

In contested cases, Rule of Civil Procedure 245 requires "reasonable notice of not less than forty-five days to the parties of a first setting for trial." TEX. R. CIV. P. 245. On the other hand, Rule 245 only goes so far: "A written order is not required when the record establishes that counsel for each party had adequate notice of the date set for trial." *Guerra v. Alexander*, No. 04-09-00004-CV, 2010 WL 2103203, at *5 (Tex. App.—San Antonio May 26, 2010, pet. denied) (mem. op.); *see also In re M.M.M.*, No. 05-19-00392-CV, 2019 WL 4744694, at *4 (Tex. App.—Dallas Sep. 30, 2019, pet. denied) (mem. op.) ("Notice may be either actual or constructive, as long as it is reasonably calculated under the circumstances to apprise the party of the pendency of the action and to provide an opportunity to present objections.").

These authorities about notice come into play because the record shows that Saldana had notice of the November trial date well in advance of trial. Specifically, the record indicates: (1) the trial court gave the case a preferential setting during the

10

two-week period running from October 31, 2023, until November 14, 2023, and (2) both sides knew it.

First, in a hearing on August 23, 2023, Saldana expressed frustration that the case had not gotten to trial. "I was ready to go April 25th. [Pena's counsel] asked for 90 days. I let her have 90 days." When asked to clarify whether he preferred a jury trial, he said he wanted to think about it before trial in November: "Judge, can I get a couple days to think about that? Because, again, we've moved it 45 days in agreement, and then it got recused, and then now we're pushing it until November." So he knew in August that trial would occur in November.

Both sides then discussed the issue further with the court, which found a Rule 11 agreement calling for a bench trial. The hearing ended with the trial court instructing Saldana to return to the courtroom on September 13 for proceedings on a motion for enforcement.

At the September 13 hearing, the trial date arose again. Saldana again showed awareness of the trial date when Pena's counsel began discussing the child's medical conditions: "Judge, I'm going to object to relevance. We're here for a motion—for, you know, terminate, and the trial is next month." The court agreed and sustained the objection. When opposing counsel suggested carrying a sanctions motion until trial, the court asked about the date for the preferential trial setting and was told October 31:

11

| | |
|---|---|
| Pena's Counsel: | Can we carry my motion for sanctions to the trial date then, as well as my motion to terminate the probation? |
| The Court: | Yes. |
| Pena's Counsel: | Okay. Could I have him [Saldana] sworn to return on those? |
| The Court: | What is the trial date? |
| Pena's Counsel: | October 31st. |
| Saldana: | I've been kicked down four times for trial. I've been waiting on trial since 2020. |

The court made it very clear that the case would go to trial:

| | |
|---|---|
| The Court: | Is it October 31st? |
| Pena's Counsel: | October 31st, November 1st, November 2nd and then November 14th. |
| The Court: | Y'all pref set? |
| Pena's Counsel: | We are pref set. |
| The Court: | Mr. Saldana, you are pref set for court on October— |
| Saldana: | Judge, I'm not playing your games. I'm going to recuse. I'm leaving. |
| The Court: | You're pref set for October 31st for your trial. So pref set means that you're definitely going to go. |

These exchanges establish beyond doubt that Saldana had ample notice of the trial date. Saldana wanted the case to go to trial, and he got exactly that. He had actual notice in August and further notice on September 13, with each hearing leaving him more than 45 days to prepare for trial. He received all he had a right to. Under Rule 245, a trial court "may set contested cases on written request of any

12

party, or on the court's own motion, with reasonable notice of not less than forty-five days to the parties of a first setting for trial, or by agreement of the parties . . . ." TEX. R. CIV. P. 245; *In re K.M.L.*, 443 S.W.3d 101, 118 (Tex. 2014).

Saldana suggests that notice must appear by paper trail in the clerk's record. This suggestion is incorrect. First, any silence in the clerk's record does not help him; it does the opposite. Appellate courts presume that trial courts will only hear cases upon proper notice to the parties. *Hildebrand v. Hildebrand*, No. 01-18-00933-CV, 2020 WL 4118023, at *4 (Tex. App.—Houston [1st Dist.] July 21, 2020, no pet.) (mem. op.); *Osborn v. Osborn*, 961 S.W.2d 408, 411 (Tex. App.—Houston [1st Dist.] 1997, pet. denied). To rebut this presumption, an appellant must affirmatively show a lack of notice, which generally requires affidavits or other competent evidence showing that he did not receive proper notice. *Hildebrand*, 2020 WL 4118023, at *4.

Second, and in any event, the hearing transcripts remove all doubt by showing that he had notice of the trial date. He himself spoke of a November trial, and the judge reiterated the timeline in open court.

In a similar vein, a few pages of Saldana's briefing seem to raise a process complaint about the manner in which he learned about (1) the denial of his tertiary recusal motion and (2) a nonsuit of a request for child support enforcement by opposing counsel.

As to the former, he suggests that trial court personnel learned of the regional presiding judge's denial of the recusal motion before he did and he was informed of the ruling via an email from the trial court coordinator before trial began, but the written order denying the motion did not issue until after trial and "occurred in conjunction with the filing of a Notice of Partial Non-Suit" by opposing counsel. In his view, this "sequence of events raises pertinent questions regarding the timing and implications" of these filings. Without deciding whether such questions are raised or pertinent, we see nothing in this issue that would matter to the correctness of the judgment. That is, we see neither any error nor any harm. *See* TEX. R. APP. P. 44.1(a) ("No judgment may be reversed on appeal on the ground that the trial court made an error of law unless the court of appeals concludes that the error complained of: (1) probably caused the rendition of an improper judgment; or (2) probably prevented the appellant from properly presenting the case to the court of appeals.").

As to the latter, Saldana does not show any trial error. He says that there is no clerk's record or reporter's record "that legally and accurately corroborates the existence of a non-suit or partial non-suit entered into the record." He perceives "profound concerns regarding the integrity of the proceedings and Mr. Saldana's right to a fair trial." And he argues that "[t]his lack of documentation further exacerbates the uncertainty surrounding the final trial proceedings and Mr. Saldana's rights." Whatever one may think about such alleged uncertainty about a nonsuit,

14

Saldana has not explained why any of it casts any doubt on the correctness of the judgment.

We overrule Saldana's second issue.

**Trial Fairness**

Finally, in his third issue, Saldana complains about the fairness of the trial. As noted earlier, Saldana characterizes the problem as a case of multiple bailiffs ganging up aggressively to intimidate him, retaliate against him for his recusal motion, and so forth. He says that as he attempted to present his position in a hearing as a pro se litigant, the bailiff admonished him to be quiet when the judge was speaking. In Saldana's view, that started a downward spiral, resulting in Saldana being charged with assault and placed in custody. When trial resumed the following day, he was moved around in handcuffs and shackles. He argues that the incarceration and restrictions on his movements hampered his ability to prepare for trial and present his case. To ensure that we describe his position fairly, we will quote from his brief:

> In the instant matter, the Appellant asserts that the trial court abused its discretion by compelling him to testify against himself while invoking his Fifth Amendment right in a judicial proceeding, without the benefit of legal counsel, and in the presence of his accusers, all under the authority of the Harris County Sheriff's Department.
>
> Excluding the Motion to Recuse presented in Issue I and the Notice of Final Trial pertaining to Issue II, the documented instances of intimidation and abusive interactions with the Harris County Bailiffs in the 309th District Court created a volatile environment. The Appellant

15

was placed at an unfair disadvantage with the court due to his report of abuse by court officers in his Motion to Recuse regarding Judge Linda M. Dunson of the 309th District Court.

We construe this complaint as an argument that the trial court abused its discretion in denying Saldana's motion for new trial.

We review a trial court's denial of a motion for new trial for an abuse of discretion. *Waffle House, Inc. v. Williams*, 313 S.W.3d 796, 813 (Tex. 2010). The trial court had the responsibility of balancing a variety of factors in deciding (1) whether to move forward with the trial as planned, and (2) whether to toss out the result and order the case tried a second time. To begin with, the trial court had to consider the need for a prompt ruling and some measure of closure. With each passing day, the child would grow older, and neither parent could ever recoup that lost time. The disputed events likewise moved further and further into the past, making it more and more difficult to ascertain the historical facts. Further, the court would have known from experience the human toll that family disputes can take on everyone involved.

On top of all this, the court lived through a trial in which it saw Saldana representing himself with considerable skill. He put on a cogent case. He testified, called witnesses, and did a very respectable job of examining and cross-examining those witnesses. He presented an opening statement and a closing argument. The trial court had a front row seat in seeing whether both sides had a fair trial. Early in

16

the trial, Saldana recognized that he had perhaps lost his cool the day before when the trial court expressed an intention to proceed despite the recusal motion, so he apologized to the court before trial went to opening statements:

Saldana: Yes, ma'am. And one more thing. I'd just like to apologize for everything. This is a very contentious case that—

The Court: I understand. I've been here since you've been in this court, so I understand.

Saldana: And I'm sorry. There's probably no excuse for it. I'll take every bit of it. Sorry for my part.

The Court: Apology accepted.

Saldana: Yes, ma'am.

The case then went forward with testimony from Pena, Saldana, Saldana's mother, and various other witnesses. We do not see the trial as being marred by any episodes involving the Fifth Amendment; he objected twice based on the Fifth Amendment, and both times the court ruled his way.

As both the presiding judge and the finder of fact, the trial court had the right to take all these things into consideration in deciding whether to order a new trial. Our system places heavy responsibility on our front-line trial judges, who have to deal with high stakes, frayed emotions, time pressures, and many other constraints. Given the totality of the circumstances, the court acted within its discretion in declining to go back to square one and hold a second bench trial. We will not second-

guess that determination by ordering the case back to the same judge for a rematch over the same issues that the parties already litigated for several days.

We overrule Saldana's third issue.

## Conclusion

We affirm the judgment of the trial court.


David Gunn
Justice

Panel consists of Chief Justice Adams and Justices Gunn and Johnson.