NO. 07-10-0110-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL C

MARCH 29, 2011
_____

In the Interest of C. M. G., A Child
_____

FROM THE 250TH DISTRICT COURT OF TRAVIS COUNTY;

NO. D-1-FM-02-005140; HONORABLE RHONDA HURLEY, PRESIDING
_____

*Opinion*
_____

Before QUINN, C.J., and HANCOCK  and PIRTLE, JJ.

Kristen Walsh Pfeiffer appeals from an order of the trial court denying her request to modify the parent/child relationship with her daughter C.M.G.  She sought to modify the geographic restriction requiring the child to live within Travis County or counties contiguous to it and permit her to move the child to Massachusetts to accommodate her current husband's employment.  The trial court denied both her request and motion for new trial founded upon newly discovered evidence.  Kristen considered those decisions to be instances of abused discretion and so argues via four issues.  We disagree.

*Background*

Kristen and Francis (Frank) Gavin were divorced in 2003 and had only one child, C.M.G., during the marriage.  The youth was almost two years old at the time of the

divorce. Both Kristen and Frank remarried and had children with their new spouses. It is unquestioned that both parents love C.M.G. and, though Kristen was granted primary custody in the divorce decree and the right to designate the child's primary residence, the parties cooperated in caring for the child until 2009. During that year, Kristen's husband, Ken Pfeiffer, lost his job in Austin, searched for employment for three months, and eventually accepted a postion in Massachusetts. There he now resides and returns periodically to Austin to visit his family.

*Applicable Authority*

We review the trial court's order under the standard of abused discretion. *In re C.R.O.,* 96 S.W.3d 442, 446 (Tex. App.–Amarillo 2002, pet. denied). Per that standard, we cannot interfere with the decision so long as some evidence of a substantive and probative character supports it and the ruling comports with the law. *Id.* at 447. Given this standard of review, it is of little import, in the first instance, that evidence appeared of record supporting a different decision. Nor can we simply accept the evidence iterated by appellant and use it as basis for changing the trial court's ruling. Rather, the onus lies with the party attacking the decision to establish that the decision was arbitrary, unreasonable, or a deviation from guiding rules and principles. Only then can it be said that discretion was abused.

Moreover, when, as here, the dispute actually concerns the tenor of the evidence presented to the trial court, appellant's interests are best served by explaining to us why no evidence supported the decision or why any evidence that could be said to support it lacks credence or probative value. Doing that not only assists the reviewing court in

addressing the task before it but also evinces true recognition of and compliance with the standard of review.

Next, one attempting to modify an order establishing conservatorship, possession, and access to a child must show that 1) there has been a material and substantial change in the circumstances, and 2) the modification would be in the best interest of the child. TEX. FAM. CODE ANN. §156.101(a) (Vernon Supp. 2010). Here, the child's father did not dispute that a material and substantial change of circumstances occurred. Rather, the dispute concerned the child's best interest.

With regard to the child's interest, we note that the public policy of this state is 1) to assure that children have frequent and continuing contact with parents who have shown the ability to act in the best interest of the child, 2) provide a safe, stable, and nonviolent environment for the child, and 3) encourage parents to share in the rights and duties of raising their child after the marriage has been dissolved. *Id.* §153.001(a) (Vernon 2008). Such policy concerns weigh heavily in assessing whether to modify geographic restrictions placed on the child's residence. And, in assuring that those concerns are appropriately addressed, the trial court may consider numerous indicia such as 1) the child's relationship with extended family, 2) the presence of friends, 3) the presence of a stable and supportive environment for the child, 4) the custodial parent's improved financial situation, 5) the positive impact on the custodial parent's emotional and mental state and its beneficial impact, if any, on the child, 6) the noncustodial parent's right to have regular and meaningful contact with the child, 7) the ability of the noncustodial parent to relocate, 8) the ability of the noncustodial parent to adapt his work schedule to the child, and 9) the health, education, and leisure

3

opportunities available to the child. *Lenz v. Lenz,* 79 S.W.3d 10, 15-16 (Tex. 2002); *In re Z.N.H.,* 280 S.W.3d 481, 486-87 (Tex. App.–Eastland 2009, no pet.).

*Application of Authority*

We readily acknowledge the presence of evidence indicating that Kristen's lot would improve if she was allowed to be with her husband in Massachussetts. And, it can be said that by enhancing Kristen's interests, those of her children could be enhanced as well.[1] *See Echols v. Olivarez,* 85 S.W.3d 475, 481 (Tex. App.–Austin 2002, no pet.) (recognizing that the child's interests can be intertwined with those of the custodial parent).[2] Also of record is evidence tending to suggest that a move would not be detrimental to C.M.G.'s interest for she will be with the family unit, be by good schools, and have access to other relatives and the like. Yet, that was not the only evidence before the trial court.

The record before us also shows that 1) Ken's education and training (mechanical engineering) qualified him for multiple jobs, not simply those in the particular field of interest he opted to pursue; 2) he accepted a job in Massachusetts

---

[1]While Kristen notes other beneficial factors such as her husband's increased salary, due to the higher cost of living and higher taxes in Massachusetts, Ken's employment with a startup company whose financial future is not certain, and the placement of their home on the market even before Ken lost his job and its failure to sell, there is room for disagreement as to whether that it falls in Kristen's favor. The increased salary will supposedly allow her to remain a stay-at-home mother but she has been a stay-at-home mother since her second child was born and she had no plans to obtain a job in the foreseeable future, even if Ken's current job does not last. There is also mention of the good schools in the area where they plan to live, but the child currently attends a "blue-ribbon" school in Austin.

[2]Kristen argues that we are bound by a statement in the *Echols* opinion to the effect that "we must primarily concentrate on the general quality of life for both the child and the custodial parent in assessing whether a change is positive and in the child's best interest." *Echols v. Olivarez,* 85 S.W.3d 475, 482 (Tex. App.–Austin 2002, no pet.). In that case, the trial court found there to be no abuse of discretion in lifting a geographical limitation because there was evidence that the child would be a direct beneficiary of her mother's promotion which would allow the mother to be better able to care for the child. *Id.* However, that opinion was based on the specific facts of that case.

4

with a "start-up" company experiencing financial losses after a three-month search even though he was capable of and actually earning money as a consultant at the time; 3) the jobs within the field of interest selected by Ken (solar energy) are "government subsidized," unstable, and could require "moving around"; 4) C.M.G.'s father (Frank) often ate lunch with her at school, attended school functions, took her on trips, regularly exercised his visitation, and rarely allowed more than a couple of days to pass without seeing her; 5) the child attended an excellent school in Austin; 6) only one airline provided non-stop service between Boston and Austin and the return flight did not arrive in Boston until 9:00 p.m.; 7) Frank held a tenured position at the University of Texas and it would be extremely difficult for him to find a like post on the East coast; 8) though Kristen offered to make the child available to Frank through video conferencing and proposed a visitation schedule allegedly affording him substantially the same amount of visitation time, visitation nonetheless was dependent on the child's school schedule;[3] 9) moving would reduce the quantum of daily contact between father and child; 10) C.M.G. loves and has a good relationship with her father, stepmother, and half sister; 11) the child also has a good friend living near her father; and 12) C.M.G. is close to Frank's sister who also lives in Austin. The foregoing evidence is not of little merit. It connotes differing home/economic environments to which C.M.G. would be exposed - one potentially unstable, nomadic, and dependent upon where jobs could be found in a unique field of interest versus another shown to be stable and secure. Needless to say, stability is important to a child's well-being. To that, we add the evidence of Ken's current financial ability to travel back and forth to Texas to be with his family while

_____

[3]It can also be said that seeing someone over the internet is far different than being in the actual presence of someone. Though a phone call may have its beneficial effects, it hardly substitutes for a hug, kiss, or touch.

pursuing his own interests.  We further note Kristen's failure to cite us to any evidence illustrating that 1) her well-being and disposition will be so affected by having to remain in or around Austin that C.M.G. would suffer, or 2) employment opportunities (outside the field of solar energy) for which Ken was trained and qualified were unavailable in or around Austin.  When considered *in toto,* the foregoing data and circumstances are enough to insulate the trial court's decision from claims of unreasonableness.

As suggested by Kristen in her brief, one must acknowledge that divorce brings change and the obligation to recognize that.  Yet, the decision to divorce is seldom made by the children of the marriage.  It is more likely foisted upon them by their parents.  And, while some commentators caution against the "slavish adherence" to public policies favoring the maintenance of continuous and frequent contact between children and both of their parents, *Echols v. Olivarez*, 85 S.W.3d at 480, parents lack the same decision-making freedom, such as the best interest of their children that they may have enjoyed *viz-a-viz* their decision to divorce.  In sum, the trial court had sufficient basis upon which to conclude that retaining the geographical restriction at issue was warranted.  Its decision does and did not constitute an instance of abused discretion.

*Motion for New Trial*

As for the motion for new trial, Kristen thought it should have been granted on the basis of newly discovered evidence.  The latter purportedly consisted of statements made by Frank regarding his wife's medical condition and how it prevented him from being C.M.G.'s full-time caretaker.  We overrule the issues.

6

Whether a trial court erred in denying a motion for new trial again depends upon whether it abused its discretion. *Waffle House, Inc. v. Williams,* 313 S.W.3d 796, 813 (Tex. 2010). Furthermore, one seeking a new trial due to newly discovered evidence must show that 1) the evidence has come to his knowledge since trial, 2) the failure to discover the evidence is not due to a lack of diligence, 3) the evidence is not cumulative, and 4) the evidence is so material it would probably produce a different result. *Id.*

That Frank's wife suffered from the particular medical condition was known to Kristen before the trial ended. Thus, it was not newly discovered evidence but could be deemed cumulative of other information presented at trial. And, that C.M.G. had stayed with her father and stepmother indicated that they had the ability to care for the child despite the medical condition; so, one could reasonably debate about whether the new evidence was so material as to probably produce a different result. Finally, a reasonable jurist could have deemed the evidence as further support for maintaining the status quo since the medical condition could be viewed as interfering with the ability of both Frank and his wife to regularly travel far distances if the child was to move. That, in turn, could reasonably be viewed as detrimental to the child's interest in maintaining substantive interaction with her entire family. Thus, denying a new trial was not an abuse of discretion.

In closing, we comment upon the tenor of appellant's argument and do so not as criticism but rather as guidance for others who may journey down the same road. Kristen focused most, if not all, of her attention upon the presence of evidence that would purportedly warrant modification of the previous order. Little was said about the

lack of evidence supporting the trial court's ruling or why the evidence which supported it was either deficient or unworthy of credence.  Litigants and their counsel must be mindful of the standard of review when drafting their briefs and argument if they wish to effectively help or influence the reviewing court.

The orders are affirmed since all issues are overruled.


Brian Quinn
Chief Justice