

## Fourth Court of Appeals
### San Antonio, Texas

## MEMORANDUM OPINION

No. 04-18-00473-CV

**IN THE INTEREST OF B.W.C.**, a Child

From the County Court, Jim Wells County, Texas
Trial Court No. 11-06-50160-CV
Honorable David A. Sanchez, Judge Presiding

Opinion by:     Liza A. Rodriguez

Sitting:        Sandee Bryan Marion, Chief Justice
                Patricia O. Alvarez, Justice
                Liza A. Rodriguez, Justice

Delivered and Filed: January 30, 2019

AFFIRMED

J.W.C. appeals the trial court's order modifying a possession order. J.W.C. presents two issues asserting: (1) the presiding judge abused its discretion in denying his motion to recuse the trial judge; and (2) the trial court abused its discretion in modifying the prior order. We affirm the trial court's judgment.

### PROCEDURAL BACKGROUND

On March 23, 2012, a final divorce decree was entered in the underlying cause appointing J.W.C. and L.C. as joint managing conservators of B.W.C. with J.W.C. having the exclusive right to designate B.W.C.'s primary residence with no geographic restrictions. Pursuant to the parties' agreement, J.W.C. had possession of B.W.C. four days each week, and L.C. had possession three days each week. At that time, J.W.C. and L.C. resided in Alice, Texas.

On June 8, 2013, J.W.C. remarried, and in July of 2017, J.W.C. relocated his family, including B.W.C., to Corpus Christi, Texas. Prior to the move, J.W.C. and L.C. were alternating possession of B.W.C. each week. Because of the distance between Alice and Corpus Christi, the possession arrangement was not feasible after the move.

On July 7, 2017, J.W.C. filed a petition to modify the possession order to a standard possession order. On August 2, 2017, L.C. filed a counterpetition seeking to be appointed as the person with the exclusive right to designate B.W.C.'s primary residence and to award J.W.C. "standard visitation and/or extra possession time by agreement between the parties."

On October 20, 2017, the trial court signed an order appointing Tracy Bru to conduct a child custody evaluation of the parties and to prepare a report. On March 29, 2018, J.W.C. filed a motion to recuse the trial judge. The motion alleged the trial judge had communications with a Homeland Security special agent via the court coordinator, and the trial judge directed his court coordinator to send an email to Bru dated March 27, 2018, which stated the information Bru sought from the special agent "is irrelevant to [the judge's] decision and therefore, there is no need for Homeland Security to provide any information to [Bru]."

On April 9, 2018, Bru filed her reports. On April 11, 2018, a hearing on the motion to recuse was held, and the presiding judge denied the motion.

The case proceeded to a three-day bench trial held on April 12, 2018, April 13, 2018, and May 11, 2018. At the conclusion of trial, the trial court modified the prior order giving L.C. the exclusive right to designate B.W.C.'s primary residence and granting J.W.C. expanded visitation. J.W.C. appeals.

## RECUSAL

In his first issue, J.W.C. contends the presiding judge abused his discretion in denying the motion to recuse the trial judge. J.W.C. asserts the trial judge engaged in ex parte communications

with a witness and interfered with Bru's statutory duties by preventing Bru's investigation into relevant claims and potentially preventing J.W.C.'s presentation of relevant evidence. As a result, J.W.C. contends the trial judge should have been recused because his impartiality might reasonably be questioned.

At the hearing on the motion to recuse, Bru testified she had reason to believe L.C. was not entirely honest with regard to questions involving her prior criminal history because she "had been given information that there were additional police reports and Homeland Security involvement on top of the minimal information [L.C.] had originally given [Bru]." When Bru emailed a special agent with Homeland Security, the special agent responded that there had been an investigation and administrative issues were pending. Bru testified she did not know what that meant and sought additional information. The special agent informed Bru she would need to submit her request in writing with a copy of the court order appointing her as the child custody evaluator. Bru then received the email from the court coordinator stating the trial judge indicated the information being sought was "irrelevant to his decision" and there was no need for Homeland Security to provide the information to Bru. Bru forwarded the email to J.W.C.'s attorney.

The court coordinator testified the special agent contacted the court by email "wanting to know what he could respond to in reference to [Bru's] email." The court coordinator showed the email to the trial judge but testified the judge did not read the email. The court coordinator further testified the trial judge responded "to let Homeland Security know that they did not have to, I guess, give any information regarding . . . [w]hat Tracy Bru was asking about. And that it was irrelevant to his decision."

We review an order denying a motion to recuse for an abuse of discretion. *Drake v. Walker*, 529 S.W.3d 516, 528 (Tex. App.—Dallas 2017, no pet.); *Sommers v. Concepcion*, 20 S.W.3d 27, 41 (Tex. App.—Houston [14th Dist.] 2000, pet. denied); TEX. R. CIV. P. 18a(j)(1)(A). "A trial

court abuses its discretion when it acts without reference to any guiding rules or principles, not when it simply exercises that discretion in a different manner than reviewing appellate courts might." *Low v. Henry*, 221 S.W.3d 609, 619–20 (Tex. 2007).

The party filing a motion to recuse bears the burden of proving recusal is warranted and must satisfy a high threshold. *Drake*, 529 S.W.3d at 528; *Ex parte Ellis*, 275 S.W.3d 109, 116 (Tex. App.—Austin 2008, no pet.). "A judge must recuse in any proceeding in which the judge's impartiality might reasonably be questioned." TEX. R. CIV. P. 18b(b)(1). "The test for recusal is whether a reasonable member of the public at large, knowing all the facts in the public domain concerning the judge's conduct, would have a reasonable doubt that the judge is actually impartial." *Drake*, 529 S.W.3d at 528 (internal quotation omitted). In challenging a judge's impartiality, "the [movant's] burden is met only through a showing of bias or impartiality to such an extent that the movant was deprived of a fair trial." *Id*.

"[J]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion." *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 240 (Tex. 2001) (quoting *Liteky v. United States*, 510 U.S. 540, 555 (1994)). Judicial rulings or actions taken during the pendency of the trial proceedings do not rise to the level of bias or impartiality "unless the actions during [the] proceedings indicate a high degree of favoritism or antagonism that renders fair judgment impossible." *Parker v. Cain*, No. 07-17-00211-CV, 2018 WL 4997784, at *2 (Tex. App.—Amarillo Oct. 15, 2018, no pet.) (mem. op.) (citing *Ludlow v. DeBerry*, 959 S.W.2d 265, 271 (Tex. App.—Houston [14th Dist.] 1997, no writ)). Stated differently, "the need for recusal is triggered only when a judge displays an attitude or state of mind so resistant to fair and dispassionate inquiry as to cause a reasonable member of the public to question the objective nature of the judge's rulings. *Ex parte Ellis*, 275 S.W.3d at 117 (internal quotation omitted). Given this standard, a

party's remedy for improper rulings is to present them as issues on appeal, not as a basis for a recusal motion. *Liteky*, 510 U.S. at 555; *Drake*, 529 S.W.3d at 528; *Sommers*, 20 S.W.3d at 41.

In this case, J.W.C. contends Bru was entitled to "verify each statement of fact pertinent to a child custody evaluation" and to obtain L.C.'s records from any governmental entity. TEX. FAM. CODE ANN. §§ 107.108(e), 107.1111(a). J.W.C. does not, however, present an issue on appeal challenging the trial judge's ruling limiting Bru's access to the records but only challenges the presiding judge's ruling on the recusal motion. Because the trial judge's ruling does not display "deep-seated and unequivocal antagonism that would render fair judgment impossible," *Liteky*, 510 U.S. at 556, we cannot conclude the presiding judge abused his discretion in denying the recusal motion.[1]

## MODIFICATION

In his second issue, J.W.C. contends the trial court abused its discretion in modifying the prior order by naming L.C. as the parent with the exclusive right to designate B.W.C.'s primary residence.

"We review a trial court's decision to modify an order regarding conservatorship or the terms of possession of and access to a child under an abuse of discretion standard." *In re M.G.N.*, 491 S.W.3d 386, 406 (Tex. App.—San Antonio 2016, pet. denied). Under an abuse of discretion standard, legal and factual insufficiency are not independent grounds for asserting error but are relevant factors in assessing whether a trial court abused its discretion. *Smith v. Karanja*, 546 S.W.3d 734, 737 (Tex. App.—Houston [1st Dist.] 2018, no pet.); *In re A.G.*, 531 S.W.3d 329, 333 (Tex. App.—Houston [14th Dist.] 2017, no pet.). A trial court does not abuse its discretion as long

---

[1] In his brief, J.W.C. also refers to the trial judge having personal knowledge of disputed evidentiary facts concerning the proceedings; however, no evidence was offered at the hearing on the motion to recuse to identify any "disputed evidentiary facts" about which the trial judge had personal knowledge.

as some evidence of a substantive and probative character supports the trial court's exercise of its discretion. *In re A.G.*, 531 S.W.3d at 333; *In re C.M.G.*, 339 S.W.3d 317, 319 (Tex. App.—Amarillo 2011, no pet.).

Section 156.101 of the Texas Family Code sets forth the grounds upon which a trial court may modify an order "that provides the terms and conditions of conservatorship, or that provides for the possession of or access to a child." TEX. FAM. CODE ANN. § 156.101(a). Such an order may be modified if: (1) there has been a material and substantial change in circumstances since the prior order; and (2) the modification would be in the best interest of the child. *Id*; *In re M.G.N.*, 491 S.W.3d at 405. J.W.C. challenges the trial court's findings on both of these required elements.

To prove a material and substantial change in circumstances since the prior order, the movant must show what conditions existed at the time of the entry of the prior order and what material conditions have changed in the intervening period. *In re S.N.Z.*, 421 S.W.3d 899, 909 (Tex. App.—Dallas 2014, pet. denied); *In re T.W.E.*, 217 S.W.3d 557, 559–60 (Tex. App.—San Antonio 2006, no pet.). "'The controlling considerations are those changes of conditions affecting the welfare of the child.'" *Epps v. Deboise*, 537 S.W.3d 238, 243 (Tex. App.—Houston [1st Dist.] 2017, no pet.) (quoting *Bukovich v. Bukovich*, 399 S.W.2d 528, 529 (Tex. 1966)). In deciding whether circumstances have materially and substantially changed, the trial judge is not confined to rigid or definite guidelines. *Id*; *In re S.N.Z.*, 421 S.W.3d at 910. "Rather, the determination depends on the facts of the case and must be made according to the circumstances as they arise." *In re S.N.Z.*, 421 S.W.3d at 910. Remarriage by a party and change in the home surroundings are two examples of a material and substantial change. *Smith*, 546 S.W.3d at 741; *In re S.N.Z.*, 421 S.W.3d at 909.

In this case, the trial court did not abuse its discretion in finding a material and substantial change in circumstances because the evidence established J.W.C. remarried since the date of the

prior order. In addition, the trial court found J.W.C., L.C., and B.W.C. all resided in Alice when the decree was entered in 2012. Accordingly, the 2017 move to Corpus Christi necessarily changed B.W.C.'s home surroundings because, as the trial court expressly found, the move rendered the prior alternating possession order "unworkable."[2]

"For reviewing the best interest of the child, we rely on what are known as the *Holley* factors." *Epps*, 537 S.W.3d at 243 (citing *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976)). The non-exhaustive factors include (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the best interest of the child; (6) the plans for the child by the individuals seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Holley*, 544 S.W.2d at 371–72. "The factfinder is not required to consider all of the factors, and the presence of a single factor may, in some instances, be adequate to support a best-interest finding." *Ceniseros v. Rychlik*, No. 03-17-00532-CV, 2018 WL 4265679, at *5 (Tex. App.—Austin Sept. 7, 2018, no pet.) (mem. op.). As previously noted, under the abuse of discretion standard of review, we examine the record and decide if some evidence of a substantive and probative character supports the trial court's finding that modification was in the child's best interest. *In re A.G.*, 531 S.W.3d at 333; *In re C.M.G.*, 339 S.W.3d at 319.

---

[2] In his brief, J.W.C. cites *In re H.N.T.*, 367 S.W.3d 901, 905 (Tex. App.—Dallas 2012, no pet.), to contend a change in location is not a material and substantial change in circumstances where the decree does not have a geographic restriction on the designation of a child's residence. In *In re C.F.M.*, No. 05-17-00141-CV, 2018 WL 2276351, at *4 (Tex. App.—Dallas May 18, 2018, no pet.) (mem. op.), however, the Dallas court distinguished *In re H.N.T.* because the mother in that case was returning to the city where she lived at the time of the divorce. The Dallas court held a move that was not anticipated at the time of a divorce is a material and substantial change in circumstances despite the absence of a geographic restriction in the decree. *Id*.

In its written findings, the trial court found that since J.W.C. moved to Corpus Christi, J.W.C. and L.C. "have been having trouble communicating and exercising court ordered custodial rights and performing their court ordered duties under the decree." The court further found allowing B.W.C. to remain with L.C. in Alice provides consistency for him by allowing his environment to remain stable "and in an environment that [B.W.C.] has known and grown up in." Finally, the court found B.W.C.'s best interests "include stability and the need to prevent constant litigation in child custody cases."

Although the interview with B.W.C. was not recorded, the trial court was aware of B.W.C..'s desires in deciding to modify the custody arrangements. The evidence established that after the move to Corpus Christi, J.W.C. did not allow L.C. to speak with B.W.C. for two weeks during which period of time B.W.C. celebrated a birthday and J.W.C. evacuated the family from Corpus Christi due to a hurricane. The evidence further established the family stayed at a hotel in Alice for several days after the evacuation. J.W.C. testified his cell phone service was affected during the evacuation but admitted he did not attempt the landline at the hotel. The evidence further established L.C.'s phone contact with B.W.C. was limited from July 2017 to February of 2018, when B.W.C was given his own phone. L.C. testified that prior to February of 2018, she probably talked to B.W.C. a couple of times a week. Furthermore, although a trial court order allowed phone contact between the hours of 5 p.m. and 8 p.m., J.W.C. limited the contact to between 7 p.m. and 8 p.m. In February of 2018, the trial judge ordered the parties to utilize a parent facilitator because communication was a concern. Although L.C. met with the parent facilitator, J.W.C. did not. Text messages between J.W.C. and L.C. were introduced into evidence in which J.W.C. insulted L.C. supporting the trial court's concern regarding the parties' communication. At trial, J.W.C. even admitted that he gets frustrated with L.C. not understanding and had "insulted her intelligence."

J.W.C. points to evidence that L.C.'s work schedule begins at 5:00 a.m. requiring B.W.C. to wake up early. L.C. testified the donut shop where she works is owned by her brother, and the evidence established B.W.C. is able to return to sleep in a place set up for him at her work until he needs to get ready for school. In addition, L.C.'s work schedule ends at 1:00 p.m. allowing her to pick B.W.C. up from school. J.W.C. also points to evidence that L.C. has difficultly assisting B.W.C. with his homework; however, L.C. testified regarding the plans she has made to provide any necessary homework assistance. Finally, J.W.C. contends L.C. does not understand how to care for B.W.C.'s health issues; however, L.C. testified she was willing to take classes to learn how to use an EpiPen in case B.W.C. had an allergic reaction.

Although Bru concludes in her child custody evaluations that "[t]here does not appear to be any evidence to strongly indicate there should be a change in the current custody arrangement," she noted B.W.C. loves both of his parents and is quite comfortable in both homes. At trial, Bru testified the communication between J.W.C. and L.C. needs to improve. Similarly, B.W.C.'s therapist testified that both parents were involved and loving, and she believed she would have been more help to the parties as a parent facilitator rather than as B.W.C.'s therapist.

Having reviewed all of the evidence presented, we hold the trial court did not abuse its discretion in modifying the prior order by appointing L.C. as the parent with the exclusive right to designate B.W.C.'s primary residence.

**CONCLUSION**

The trial court's order is affirmed.

Liza A. Rodriguez, Justice
