

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-18-00250-CV

**IN THE INTEREST OF K.K.R.**, a Child

From the 293rd Judicial District Court, Maverick County, Texas
Trial Court No. 11-06-26606-MCV
Honorable Susan D. Reed, Judge Presiding

Opinion by:     Sandee Bryan Marion, Chief Justice

Sitting:        Sandee Bryan Marion, Chief Justice
                Patricia O. Alvarez, Justice
                Liza A. Rodriguez, Justice

Delivered and Filed: February 6, 2019

AFFIRMED

K.K.R.'s mother, L.D., appeals the trial court's order modifying a prior child custody order. The modified order designates K.K.R.'s father, E.R., as the person with the exclusive right to determine K.K.R.'s primary residence.  L.D. contends the trial court erred in holding a hearing on E.R.'s petition to modify because E.R. did not attach the affidavit required by section 156.102 of the Texas Family Code to his petition.  L.D. also contends the trial court abused its discretion in ordering the modification.  We affirm the trial court's order.

### BACKGROUND

K.K.R. was born on February 28, 2010.  On June 21, 2011, the trial court signed an order establishing a parent-child relationship between E.R. and K.K.R. and ordering E.R. to pay L.D. child support.  The order also appointed L.D. and E.R. joint managing conservators and designated

L.D. as the conservator with the exclusive right to determine K.K.R.'s primary residence. The order also required E.R. to pay L.D. monthly child support.

On August 10, 2015, the trial court signed an order modifying the amount of child support E.R. was required to pay. The order did not alter the conservatorship provisions of the June 21, 2011 order.

On May 2, 2016, E.R. filed a petition to modify requesting to modify the drop off and pick up location for purposes of access and possession. On June 10, 2016, E.R. filed an amended petition to modify requesting to be appointed as the person with the exclusive right to determine K.K.R.'s primary residence. Both the original and amended petitions state the order to be modified was rendered on August 5, 2015.

On November 16, 2016, the trial court signed an agreed order for the preparation of a social study which was prepared on January 25, 2017 and filed of record on February 8, 2017. The trial court held a bench trial on the amended petition to modify on November 27, 2017.

E.R. lives in San Antonio, Texas, and L.D and K.K.R. live in Eagle Pass, Texas. E.R. testified he did not have any concerns about L.D.'s living situation or her caring for K.K.R. in 2011, when the initial conservatorship order was entered. However, E.R. testified in 2014, L.D. sometimes lived with her mother and sometimes lived with her boyfriend, and in 2015, L.D. was living in an RV with her boyfriend and K.K.R. The social study, which was introduced into evidence, stated that L.D. reported she and K.K.R. were living with L.D.'s mother until three months before the social study when she and her boyfriend decided to invest in a two-bedroom RV. The social study reported that the boyfriend was living in a home adjacent to the RV.

In May of 2017, L.D. met a new boyfriend, and approximately five months before trial, L.D. began living in an apartment with her new boyfriend and K.K.R. At the time of trial, L.D.

was six-and-a-half months pregnant. L.D. testified she and her boyfriend were planning to get married in October of next year.

At trial, L.D. testified she began working as an ER tech in an emergency room in June of 2017 and works twelve hour shifts three days a week but sometimes stays an hour or two longer than her scheduled shift. Prior to working at the emergency room, L.D. briefly worked as a receptionist for two months after being fired by a medical care company where she worked for about a year. At the medical care company, L.D.'s scheduled hours were 5:00 a.m. to 5:00 p.m. four days a week; however, she often worked sixteen-hour shifts until 10:00 p.m. L.D. testified her mother and her sister take care of K.K.R. while she is working. In the social study, L.D. reported she was working three sixteen-hour days since January of 2016.

L.D. admitted K.K.R. had sixteen unexcused absences from school before E.R. filed the petition to modify but only had missed once or twice since the petition was filed. In the social study, K.K.R.'s kindergarten teacher confirmed K.K.R. had sixteen reported absences. One school K.K.R. was attending withdrew her from the school after she was absent for three days and the school discovered K.K.R. was no longer living in the district. Because L.D. was working, E.R. drove to Eagle Pass and took the steps necessary to enroll K.K.R. in another school.

L.D. admitted E.R. had taken K.K.R. to routine doctor's appointments and for vaccines and was actively involved in picking her up from school and participating in school activities despite having to travel from San Antonio to Eagle Pass. E.R. testified he is an active parent and involved in assisting K.K.R. with homework.

K.K.R.'s vaccinations are not up-to-date, and L.D. was waiting until K.K.R. was eligible for health insurance through L.D.'s new job. L.D. admitted she previously told E.R. she did not think vaccinations were important. In 2013, K.K.R. severely burned the back of her leg after L.D. sat her on a counter by a stove to give her medicine, and K.K.R.'s leg moved over onto a burner

on the stove. Although K.K.R. was crying and in pain, L.D. did not take K.K.R. to the doctor. E.R. testified when he arrived, K.K.R.'s burn was covered with mustard and was blistering. Based on her training in nursing school, L.D. told E.R. she did not believe K.K.R. needed to be seen by a doctor. E.R. took K.K.R. to the doctor the next day, and the burn was diagnosed as a third-degree burn. Given the severity of the burn, the doctor's office reported the injury to CPS. Photographs of the burn were introduced into evidence. As a result of the incident, CPS removed K.K.R. from L.D.'s care and placed her with L.D.'s mother for several months until L.D. completed services.

E.R. testified at the time K.K.R. was severely burned in 2013, he was living in an apartment with a male roommate and his work schedule was not stable. In the social study, E.R. reported he wanted to obtain custody of K.K.R. in 2013 but was not in a stable position to do so. When he filed his petition, however, E.R. testified his work schedule was stable, and he was living alone in a two-bedroom apartment. And, E.R.'s sister and aunt are available to care for K.K.R. if needed.

At the conclusion of the testimony, the trial court interviewed K.K.R. in chambers. Because K.K.R. was seven years old, the interview was not recorded.[1]

On January 9, 2018, the trial court signed the order modifying the prior order to designate E.R. as the person with the exclusive right to determine K.K.R.'s residence. L.D. appeals.

## STANDARD OF REVIEW

We review a trial court's decision to modify an order regarding conservatorship or the terms of possession of and access to a child under an abuse of discretion standard. *In re M.G.N.*, 491 S.W.3d 386, 406 (Tex. App.—San Antonio 2016, pet. denied). Under an abuse of discretion standard, legal and factual insufficiency are not independent grounds for asserting error but are

---

[1] Section 153.009 of the Texas Family Code requires a trial court to interview children 12 years of age or older and allows a trial court to interview children under 12 years of age; however, a record of the interview is only required to be made if the child is 12 years of age or older. TEX. FAM. CODE ANN. § 153.009.

relevant factors in assessing whether a trial court abused its discretion. *Smith v. Karanja*, 546 S.W.3d 734, 737 (Tex. App.—Houston [1st Dist.] 2018, no pet.); *In re A.G.*, 531 S.W.3d 329, 333 (Tex. App.—Houston [14th Dist.] 2017, no pet.). A trial court does not abuse its discretion as long as some evidence of a substantive and probative character supports the trial court's exercise of its discretion. *In re A.G.*, 531 S.W.3d at 333; *In re C.M.G.*, 339 S.W.3d 317, 319 (Tex. App.—Amarillo 2011, no pet.).

## SECTION 156.102 AFFIDAVIT

In pertinent part, section 156.102(a) of the Texas Family Code requires an affidavit to be attached to a petition to modify if the "suit seeking to modify the designation of the person having the exclusive right to designate the primary residence of a child is filed not later than one year after . . . the date of the rendition of the [prior] order." TEX. FAM. CODE ANN. § 156.102(a). The trial court may not hold a hearing on a petition to modify if the affidavit required by section 156.102(a) is not attached. *See id*. § 156.102(c).

In her first two issues, L.D. asserts E.R.'s petition refers to the order entered by the trial court in August 2015, and he filed his petition to modify on May 11, 2016. Therefore, L.D. contends the trial court erred in conducting a hearing on E.R.'s petition because the affidavit required by section 156.102(a) was not attached to his petition. L.D. further contends the affidavit is a jurisdictional requirement; therefore, the trial court did not have jurisdiction to modify the prior order. Although he acknowledges his petition referred to the August 2015 order, E.R. responds that he was seeking to modify the June 21, 2011 order because the August 2015 order did not change the conservatorship provisions of the 2011 order.

Contrary to L.D.'s contentions, section 156.102(a) only applies to suits seeking to modify a prior order designating the parent having the exclusive right to designate the primary residence of a child. *Id*. § 156.102(a). The only prior order entered by the trial court designating the parent

having the exclusive right to designate K.K.R.'s residence was the June 21, 2011 order. The August 2015 order only addressed child support. Because E.R.'s petition was filed more than one year after the June 21, 2011 order, he was not required to file an affidavit under section 156.102(a). *See In re J.A.*, 482 S.W.3d 141, 144-46 (Tex. App.—El Paso 2015) (holding affidavit not required where petition was filed on April 30, 2013, and child support review order entered on April 10, 2013 did not alter conservatorship provisions of October 6, 2010 order).

In addition, "Texas follows a 'fair notice' standard for pleading, meaning we consider whether the opposing party can ascertain from the pleading the nature and basic issues of the controversy and what testimony will be relevant." *In re A.D.*, 474 S.W.3d 715, 730 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (citing *Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 896 (Tex. 2000)). "A petition is sufficient if it gives fair and adequate notice of the facts upon which the pleader bases his claim." *Id*. "A court should liberally construe a petition in favor of the pleader if no special exceptions are filed." *Id*.

In this case, L.D. never brought the absence of the affidavit to the trial court's attention but raises the issue for the first time on appeal. During the bench trial, L.D. was clearly aware that the provision of the prior order E.R. was seeking to modify was the provision designating the person with the right to determine K.K.R.'s primary residence.[2] In addition, L.D. expressly acknowledges in her brief that "[t]he conservatorship provisions did not change" in the August 2015 order. Liberally construing E.R.'s pleading, L.D. had fair notice that the June 21, 2011 order was the order E.R. sought to modify.

---

[2] E.R.'s attorney noted in her opening statement that the 2015 order only modified child support, and possession and access had not changed since the first order.

**MODIFICATION**

In her third issue, L.D. contends the trial court abused its discretion in modifying the prior order.

Section 156.101 of the Texas Family Code sets forth the grounds upon which a trial court may modify an order "that provides the terms and conditions of conservatorship, or that provides for the possession of or access to a child." TEX. FAM. CODE ANN. § 156.101(a). Such an order may be modified if: (1) there has been a material and substantial change in circumstances since the prior order; and (2) the modification would be in the best interest of the child. *Id*; *In re M.G.N.*, 491 S.W.3d at 405. L.D. challenges the trial court's findings on both of these required elements.

To prove a material and substantial change in circumstances since the prior order, the movant must show what conditions existed at the time of the entry of the prior order and what material conditions have changed in the intervening period. *In re S.N.Z.*, 421 S.W.3d 899, 909 (Tex. App.—Dallas 2014, pet. denied); *In re T.W.E.*, 217 S.W.3d 557, 559-60 (Tex. App.—San Antonio 2006, no pet.). "'The controlling considerations are those changes of conditions affecting the welfare of the child.'" *Epps v. Deboise*, 537 S.W.3d 238, 243 (Tex. App.—Houston [1st Dist.] 2017, no pet.) (quoting *Bukovich v. Bukovich*, 399 S.W.2d 528, 529 (Tex. 1966)). In deciding whether circumstances have materially and substantially changed, the trial judge is not confined to rigid or definite guidelines. *Id*; *In re S.N.Z.*, 421 S.W.3d at 910. "Rather, the determination depends on the facts of the case and must be made according to the circumstances as they arise." *In re S.N.Z.*, 421 S.W.3d at 910. Change in the home surroundings is one example of a material and substantial change. *Smith*, 546 S.W.3d at 741; *In re S.N.Z.*, 421 S.W.3d at 909.

In this case, the trial court did not abuse its discretion in finding a material and substantial change in circumstances because the evidence clearly established changes in K.K.R.'s home surroundings. In 2011, E.R. testified he had no concerns about L.D.'s living arrangements. Since

that time, L.D. and K.K.R. had alternated between living with L.D.'s mom and two of L.D.'s boyfriends. L.D. and K.K.R. moved in with L.D.'s current boyfriend after L.D. had only been dating him a few months.

"In reviewing the best interest of the child, we rely on what are known as the *Holley* factors." *Epps*, 537 S.W.3d at 243 (citing *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976)). The non-exhaustive factors include (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the best interest of the child; (6) the plans for the child by the individuals seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Holley*, 544 S.W.2d at 371-72. "The factfinder is not required to consider all of the factors, and the presence of a single factor may, in some instances, be adequate to support a best-interest finding." *Ceniseros v. Rychlik*, No. 03-17-00532-CV, 2018 WL 4265679, at *5 (Tex. App.—Austin Sept. 7, 2018, no pet.) (mem. op.). As previously noted, under the abuse of discretion standard of review, we examine the record and decide if some evidence of a substantive and probative character supports the trial court's finding that modification was in the child's best interest. *In re A.G.*, 531 S.W.3d at 333; *In re C.M.G.*, 339 S.W.3d at 319.

Although the interview with K.K.R. was not recorded, the trial court was aware of K.K.R.'s desires in deciding to modify the custody arrangements. E.R. was living in a two-bedroom apartment where K.K.R. would have her own room, while L.D. was living with a boyfriend she had only been dating for approximately six months. E.R. had a work schedule that would allow him to pick up K.K.R. from school and help her with her homework. When a school withdrew

K.K.R. because she was not living in the district, E.R. drove to Eagle Pass to enroll her in a new school because L.D. was busy working. While in L.D.'s care, K.K.R. suffered a serious burn and was not up-to-date on her vaccinations. Having reviewed all of the evidence presented, we hold the trial court did not abuse its discretion in finding that designating E.R. as the parent with the exclusive right to determine K.K.R.'s primary residence was in K.K.R.'s best interest. Although the trial court's decision was contrary to the evaluator's recommendation in the social study, the social study was finalized ten months before trial and was only a portion of the evidence the trial court considered in making its ruling. *See In re M.W.S.H.*, No. 07-04-0559-CV, 2006 WL 223753, at *3 (Tex. App.—Amarillo Jan. 30, 2006, no pet.) (mem. op.) (affirming trial court's ruling on petition to modify even though contrary to conclusion in court-ordered social study).

## CONCLUSION

The trial court's order is affirmed.

Sandee Bryan Marion, Chief Justice