

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-24-00799-CV

**IN THE INTEREST OF S.I.S.F.**, a Child

From the 150th Judicial District Court, Bexar County, Texas
Trial Court No. 2021CI23503
Honorable Tina Torres, Judge Presiding

Opinion by:     Lori Massey Brissette, Justice

Sitting:        Irene Rios, Justice
                Lori Massey Brissette, Justice
                Adrian A. Spears II, Justice

Delivered and Filed: January 28, 2026

AFFIRMED

Mother appeals a final judgment in a suit affecting the parent-child relationship involving her daughter, S.I.S.F.[1] In her sole issue on appeal, Mother challenges the judgment's geographic restriction limiting the primary residence of S.I.S.F. to Bexar County and contiguous counties. Because we conclude the trial court did not abuse its discretion by imposing this geographic restriction, we affirm.

---

[1] To protect the identity of the minor child, we refer to appellant as "Father," to appellee as "Mother," and to the child by her initials. *See* TEX. FAM. CODE § 109.002(d); TEX. R. APP. P. 9.8.

BACKGROUND

In May of 2018, Mother and Father met in Miami, Florida. At that time, Mother was living in the Dominican Republic. The two began pursuing a long-distance romantic relationship. Father visited Mother in the Dominican Republic, and Mother traveled to San Antonio, Texas to visit Father. Mother became pregnant with S.I.S.F in the fall of 2019. Mother traveled to San Antonio, Texas in March of 2020, staying with Father at his mother's residence, until the two moved into Father's new home in San Antonio, Texas in June of that year. Their romantic relationship ended, but they continued living together in Father's home. S.I.S.F was born in San Antonio in July of 2020. Mother moved out of Father's home in October of 2021.

In November of 2021, Father filed his Original Petition in Suit Affecting the Parent-Child Relationship. Mother responded with an answer and counterpetition. Temporary orders were entered, and ultimately a multi-day non-jury trial was held, during which Mother asked for either no geographic residency restriction, so she could move with S.I.S.F. back to the Dominican Republic, or in the alternative a restriction to anywhere in the U.S., so she could move with S.I.S.F. to Florida.

The trial judge took the matter under advisement, and then she issued her Judge's Notes, which indicated that Mother was named the sole managing conservator with the exclusive right to determine S.I.S.F.'s residence within Bexar and contiguous counties as long as Father resides in one of these counties. Father was designated possessory conservator.

Mother filed her Motion for Reconsideration of Geographic Restriction, and Father filed his Motion to Enter Order. The trial court then entered its final judgment based on the Judge's Notes. The judgment contained the following geographic restriction and supportive findings:

> The Court finds that, in accordance with section 153.001 of the Texas Family Code, it is the public policy of Texas to assure that children will have frequent and

continuing contact with parents who have shown the ability to act in the best interest of the child; to provide a safe, stable, and nonviolent environment for the child; and to encourage parents to share in the rights and duties of raising their child. IT IS ORDERED that the primary residence of the child shall be within Bexar County, Texas and Contiguous Counties, and the parties shall not remove the child from Bexar County, Texas and Contiguous Counties for the purpose of changing the primary residence of the child until this geographic restriction is modified by further order of the court of continuing jurisdiction or by a written agreement that is signed by the parties and filed with that court.

IT IS FURTHER ORDERED that this geographic restriction on the residence of the child shall be lifted if, at the time [Mother] wishes to remove the child from Bexar County, Texas and Contiguous Counties for the purpose of changing the primary residence of the child, [Father] does not reside in Bexar County, Texas and Contagious [sic] Counties.

Mother filed a Motion for New Trial. The trial court denied both her Motion for Reconsideration of Geographic Restriction and her Motion for New Trial. Mother timely appealed, arguing in her sole issue that the trial court erred by imposing the geographic residency restriction.

### STANDARD OF REVIEW AND APPLICABLE LAW

The trial court has "wide discretion when deciding matters of custody, control, possession, support, or visitation, and we review such matters for an abuse of discretion." *In re E.N.E.P.*, 719 S.W.3d 660, 663–64 (Tex. App.—San Antonio 2025, no pet.) (quoting *In re J.A.V.*, No. 04-21-00084-CV, 2022 WL 379316, at *1 (Tex. App.—San Antonio Feb. 9, 2022, no pet.) (mem. op.)). Because the trial court is in the best position to observe the witnesses and their demeanor, we will not find that the trial court abused its discretion in such cases unless, in light of the evidence presented to it, the trial court acted arbitrarily or unreasonably, without reference to any guiding principles, or it otherwise failed to correctly analyze the law. *Id.* at 664. "Accordingly, the mere fact that we might have decided an issue differently than the trial court does not establish an abuse of discretion." *Id.* We may set aside a trial court's judgment only if its error "probably caused the rendition of an improper judgment, or probably prevented the appellant from properly presenting

the case" to this court. *Id.* (citing *In re T.M.P.*, 417 S.W.3d 557, 562-63 (Tex. App.—El Paso 2013, no pet.)).

Texas does not have any specific statute regarding geographic residency restrictions in custody cases. *Lenz v. Lenz*, 79 S.W.3d 10, 14 (Tex. 2002). However, unless limited by court order, a sole managing conservator, such as Mother here, has the exclusive right to designate the primary residence of a child. TEX. FAM. CODE § 153.132(1). "Any residency restriction imposed on this right is within the trial court's discretion based on the best interest of the child." *Sanchez v. Sanchez*, No. 04-06-00469-CV, 2007 WL 1888343, at *3 (Tex. App.—San Antonio July 3, 2007, pet. denied); *see* TEX. FAM. CODE § 153.002(a) ("The best interest of the child shall always be the primary consideration of the court in determining the issues of conservatorship and possession of and access to the child."); *Lenz*, 79 S.W.3d at 14 (citing section 153.002(a)). Furthermore, appellate review of residency restrictions should be guided by the basic framework outlined in Family Code section 153.001(a). *Lenz*, 79 S.W.3d at 14; *In re K.L.W.*, 301 S.W.3d 423, 425 (Tex. App.—Dallas 2009, no pet.). This section states that the public policy of Texas is to: "(1) assure that children will have frequent and continuing contact with parents who have shown the ability to act in the best interest of the child; (2) provide a safe, stable, and nonviolent environment for the child; and (3) encourage parents to share in the rights and duties of raising their child after the parents have separated or dissolved their marriage." TEX. FAM. CODE § 153.001(a)(1)–(3).

Because suits affecting the parent-child relationship "are intensely fact driven," a wide array of factors can be relevant to the determination of whether a residency restriction is in a child's best interest. *Lenz*, 79 S.W.3d at 19; *K.L.W.*, 301 S.W.3d at 425. These factors include the

(1) reasons for and against the move;

(2) education, health, and leisure opportunities afforded by the move;

(3) accommodation of the child's special needs or talents;

(4) effect of extended family relationships;

(5) effect on visitation and communication with the noncustodial parent;

(6) noncustodial parent's ability to relocate; and

(7) the child's age.

*K.L.W.*, 301 S.W.3d at 425–26 (citing *Lenz*, 79 S.W.3d at 15–16). We may also consider the general factors relevant to the best interest of a child set forth in *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex.1976). *Id.* at 426. We defer to a trial court's findings of fact if the findings are supported by sufficient evidence.[2] *In re T.D.L.*, 621 S.W.3d 346, 352 (Tex. App.—San Antonio 2021, no pet.).

## ANALYSIS

Before we apply the *Lenz* factors to the trial evidence here, we first address arguments Mother makes in support of her contention that the trial court abused its discretion by imposing the geographic residency restriction in its judgment.

She argues (1) her own legal domicile has always been the Dominican Republic; and (2) a child's legal domicile is that of the custodial parent. These assertions might seem to suggest the trial court ordered her to abandon her place of residence and move from the Dominican Republic to Bexar County or a contiguous county. It did not. The trial evidence shows Mother lived in Bexar County from March of 2020 through November of 2021, and then after trips to Arizona and Pennsylvania, she returned to live in Bexar County from January or February 2022 through the end of trial, making only a single brief trip to the Dominican Republic in 2022: Mother testified

---

[2] In our review under the abuse of discretion standard, legal and factual sufficiency are not independent grounds of error but are relevant factors in deciding whether the trial court abused its discretion. *In re M.M.M.*, 307 S.W.3d 846, 849 (Tex. App.—Fort Worth 2010, no pet.).

that she left for the Dominican Republic on August 27, 2022, and returned to Bexar County exactly one month later. Therefore, from March of 2020 onwards, Mother and S.I.S.F. have never lived in the Dominican Republic. Instead, they lived in Bexar County, spending far more time there than anywhere else, and they were living in Bexar County when the trial court issued its final judgment. The geographic restriction thus merely required Mother not to move with S.I.S.F. too far from where they were already living.

Furthermore, our review of the judgment's geographic restriction does not hinge on what Mother might have subjectively considered to be her legal domicile, but rather what is in the child's best interest. *See K.L.W.*, 301 S.W.3d at 425–26; *Lenz*, 79 S.W.3d at 14–16. Mother's argument relies on inapposite opinions that do not review a trial court's decision regarding a geographic residency restriction in a suit affecting a parent-child relationship. *See Everson v. Boydston*, 377 S.W.2d 117, 119 (Tex. App.—El Paso 1964, no writ) (noting in an appeal where sole issue was jurisdiction that "for the broader consideration of the welfare of the children," the Texas court "could retain jurisdiction even if it can be said that, technically, the domicile of the children is with the mother in Oklahoma."); *Peacock v. Bradshaw*, 145 Tex. 68, 74, 194 S.W.2d 551, 554 (1946) (concerning court's "jurisdiction to render judgment awarding custody of the child."); *Fluor Corp. v. E.D.G.M.*, No. 05-19-00921-CV, 2022 WL 1222713, at *1–2 (Tex. App.—Dallas Apr. 26, 2022, no pet.) (not a suit affecting a parent-child relationship). Mother does not challenge the trial court's jurisdiction, and we see no reason to question its jurisdiction here. *See* TEX. R. APP. P. 47.1.

Mother also argues the trial court abused its discretion in imposing the geographic restriction by asserting the facts here are analogous to those in *Lenz*, 79 S.W.3d at 17–19. While the *Lenz* factors necessarily apply here, the procedural posture in *Lenz* bears no resemblance to this case. There, the primary custodial parent sought to modify a joint managing conservatorship

to remove a residency restriction. *Id.* at 11. Contrary to a jury's verdict in favor of the modification, the trial court entered an order retaining the residency restriction, and the court of appeals affirmed. *Id.* Thus, the issue before the Texas Supreme Court was whether Texas Family Code section 105.002 permits a trial court to impose a geographic restriction on a child's primary residence *contrary to a jury's verdict* when that verdict is supported by sufficient evidence. *Id.* The *Lenz* court concluded section 105.002 does not so permit. *Id.* at 11–12. The Family Code section at issue in *Lenz* does not apply to the non-jury trial here: section 105.002 governs jury trials, stating that a court "may not contravene a jury verdict" on certain issues. TEX. FAM. CODE § 105.002. Therefore, the outcome in *Lenz* is not dispositive here.

Having addressed Mother's main arguments, we turn to the trial evidence relevant to the *Lenz* factors. As set forth below, we conclude that sufficient evidence supports the trial court's findings that the geographic restriction is in the child's best interest and accords with the public policy of Texas as articulated in section 153.001 of the Family Code. Therefore, the trial court did not act arbitrarily or unreasonably by imposing the geographic restriction.

**Trial Evidence**

*A. Opportunities afforded by the move*

Mother testified that she worked as a licensed urologist in the Dominican Republic before meeting Father. She testified that it could take eight to ten years for her to be able to practice as a urologist in Texas. Mother asserted she would have a better chance to grow in her career in Florida. She testified that her main reason for wanting to live in Florida is to be able to earn a salary that allows her to maintain herself there. Mother also testified that after she moved in with Father in 2020, she took practice standardized tests to try to become a doctor in the United States, but she

also admitted she had not taken any practice tests for over a year before trial. Father testified that he had paid for Mother's practice exams so that she could become a licensed physician in Texas.

Mother testified she has looked for jobs in San Antonio for her current qualifications, and she agreed that there are hundreds of such jobs available. Father testified he would gladly financially support Mother as long as needed to help her to meet her career goals.

Mother also testified that moving to Florida would benefit S.I.S.F because Mother could show her a positive example of independence there. When asked what benefit the move would have to S.I.S.F., Mother responded:

> My mom taught me to be independent, to make the effort to get my dreams and work for my dreams. She actually sacrificed herself so I can go to university. I was the only one of my sisters that went to university. I want to give my child the same example. I want her to see that her mom did not give up, that she always fought. And I want to honor the efforts that my family did, and especially my mom.

Similarly, Mother gave the following explanation as to why she believes it is not in the best interest of S.I.S.F. that there be a restriction to Bexar County or a contiguous county:

> For the same thing I said before, I want to have—to be independent. I want to have a support net. And in Florida there is a Dominican community. I want her to learn my culture. I want her to have some bonds with my family as well. She loves the beach. She wants to go to the beach every day. And I think if she sees a good example of me as an independent woman, that could have a positive impact in her development.

### B. Effect on extended family relationships

Although Mother testified that moving to Florida would benefit S.I.S.F. by helping the child develop relationships with Mother's family, Mother testified she wants to move to Daytona, and Mother acknowledged that her relative who lives closest to Daytona is her aunt who resides in Miami, which is over three hours away.

In contrast, S.I.S.F. has already been building family bonds with Father's numerous relatives in San Antonio. Father lives with his wife and three other children, and he has a fifty-fifty

possession schedule with the mother of a fourth child, who also lives in San Antonio. His fourth child's mother testified that Father is a very good and supportive dad to his fourth child, and that this child and S.I.S.F. have a great relationship. Father also testified that S.I.S.F. has developed a close relationship with his other daughter who is only a year older than S.I.S.F., stating they are "inseparable" and do lots of activities together. S.I.S.F. also spends time with her cousin, who is in the same age group.

Father's brothers and both of his parents live in San Antonio. Father's mother is very close with S.I.S.F., and Father testified his mother is able to care for S.I.S.F. when needed. Father's mother testified that she has done many activities with Father and S.I.S.F, including going to Canyon Lake and Sea World. Father testified at trial that Mother's current residence is less than a mile from the home of Father's mother.

## C. *Effect on visitation and communication with Father*

Father testified he is afraid that if Mother leaves Bexar County or a contiguous county, he may not be able see S.I.S.F. He stated that she "just doesn't want me in [S.I.S.F.'s] life," and she "just wants to go in a completely different direction regardless of the support that we tried to give to her."

Mother testified that after she moved out of Father's home in October 2021, she took S.I.S.F. with her and spent a couple of weeks at a neighbor's house in San Antonio, then stayed at a shelter for two weeks, then a hotel for a week. She then went to Arizona for a few weeks, and then Pennsylvania for several weeks. She testified she did not contact Father during this period. Father testified that from the day Mother moved out in October 2021, he did not see her again until the trial.

Father testified he tried to contact Mother numerous ways to find out where S.I.S.F. was, but after receiving no response, he hired his attorney and filed his Original Petition in Suit Affecting the Parent-Child Relationship. Father had difficulty serving Mother because he did not know her whereabouts. Father testified that instead of resuming communication, Mother filed for a protective order. Mother finally returned to San Antonio in early 2022, about three months after she had left Father's home. Father testified that even once a temporary order regarding visitation was in place, Mother did not enable him to see S.I.S.F. for almost two months. He testified Mother has not been communicative regarding visitations or S.I.S.F.'s whereabouts.

*D. Additional reasons against the move*

Father testified he intends to remain permanently in the San Antonio area, and that he "can't move" in the event Mother and S.I.S.F. move away from Bexar County or a contiguous county, due to his upcoming retirement, his existing family and military ties, and his custody arrangement with the mother of one of his other children.

Father testified he has plans to get S.I.S.F. involved with sports as he has done for his son, who is in a soccer league that Father pays for. Father has plans to put both S.I.S.F. and his other daughter of a similar age into a soccer league with i9 Sports, and to sign up S.I.S.F. for swimming at Northside ISD and dance at Adrenaline Rush, and he plans to pay for all these activities. Father testified he likes to take his children to Sea World and Fiesta Texas, where he has a season pass.

Father testified at trial that he pays about $2,100 to $2,200 per month to support Mother, including child support, rent, vehicle stuff and other bills. In her testimony, Mother acknowledged previous financial instability: she testified that she had to stop working once she became pregnant in the fall of 2019, and that she then asked Father for financial support, telling him that she does not have any money nor a place to live, and that she cannot make it alone.

The final judgment reflects this disparity in financial stability. The judgment contains a finding that Father has a net income of over $9,200 per month, and it orders Father to provide child support, medical and dental coverage for S.I.S.F., and a vehicle and car insurance for Mother as long as S.I.S.F. resides within Bexar County or contiguous counties.

**Application**

On this evidence, the trial court could have reasonably concluded that the *Lenz* factors establish the geographic restriction is in the best interest of the child. *See* 79 S.W.3d at 15–16. The trial court could have reasonably determined that Mother's reasons she wants to move to Florida, including her career ambitions and desire for independence, are more personal than indicative of S.I.S.F.'s best interest. *See id.* at 14 (best interest of the child is court's primary consideration); TEX. FAM. CODE § 153.002(a) (same); *In re C.M.G.*, 339 S.W.3d 317, 320–21 (Tex. App.—Amarillo 2011, no pet.) (holding trial court did not abuse discretion in imposing geographic restriction even though mother's new husband moved to Massachusetts for a job opportunity).[3]

Given the evidence of Father's stability, his extensive family ties in the San Antonio area, and his active involvement in the lives of his children including S.I.S.F., the trial court could have reasonably concluded that the geographic restriction provides S.I.S.F. more stability, better opportunities to deepen extended family relationships, and better opportunities to participate in healthy activities such as sports and dance. And given Mother's lack of communication with Father

---

[3] Mother also argues that by placing the geographic restriction, the trial court "ratified and enabled" economic abuse by Father on Mother. As her only evidence of such abuse, she cites her own unsworn declaration filed as an exhibit to her post-trial motions, which alleges Father's financial support has not been consistent and reiterates her assertion that she has better career opportunities in Florida. At trial, her counsel also alleged Father had been economically abusive in that Mother is an "economic prisoner" under Father's "control" who wants "her freedom." Mother has not pointed to any objective evidence rising to the level of "economic abuse," and the trial court was in the best position to observe the witnesses and their demeanor, including when they testified about Father's financial support. *See E.N.E.P.*, 719 S.W.3d at 663–64. On this record, we cannot conclude the trial court's failure to find such alleged economic abuse was an abuse of discretion. *See id.* We emphasize that Mother's desire for more economic independence does not suffice to show that removing the geographic restriction is in the *child's* best interest, which is the primary consideration in this appeal. *See Lenz*, 79 S.W.3d at 14.

and transience as she traveled to multiple locations including Arizona and Pennsylvania, the trial court could have also reasonably concluded the restriction better ensures visitation, communication, and meaningful relations with Father, who cannot relocate. *See In re S.M.D.*, 329 S.W.3d 8, 22 (Tex. App.—San Antonio 2010, pet. dism'd) ("We perceive the purpose of imposing a geographic residency restriction is to ensure those who have rights to possession of the child are able to effectively exercise such rights."); *In re D.C.*, No. 05-12-01574-CV, 2014 WL 1887611, at *7 (Tex. App.—Dallas May 9, 2014, no pet.) (affirming geographic restriction since it "ensur[ed]" exercise of parental rights).

These factors all weigh in favor of the geographic restriction. *See K.L.W.*, 301 S.W.3d at 425–26 (citing *Lenz*, 79 S.W.3d at 15–16). Given the ample trial evidence that the geographic restriction is in S.I.S.F.'s best interest, and the trial court's wide discretion in deciding such matters, we conclude the trial court did not act arbitrarily or unreasonably by imposing the geographic restriction. *See E.N.E.P.*, 719 S.W.3d at 663–64; *Sanchez*, 2007 WL 1888343, at *3.

We further conclude that the evidence sufficiently supports the trial court's finding that the geographic residency restriction accords with the public policy of Texas as articulated in section 153.001 of the Family Code. There was sufficient evidence that the geographic restriction will (1) "assure that [S.I.S.F.] will have frequent and continuing contact" with Father, who has "shown the ability to act in the best interest of the child," (2) "provide a safe, stable, and nonviolent environment" for S.I.S.F., and (3) "encourage parents to share in the rights and duties of raising their child." TEX. FAM. CODE § 153.001(a)(1)–(3). We therefore defer to this finding. *See T.D.L.*, 621 S.W.3d at 352. We cannot find an abuse of discretion here in light of this sufficiently-supported section 153.001 finding. *See Lenz*, 79 S.W.3d at 14; *K.L.W.*, 301 S.W.3d at 425.

**CONCLUSION**

Based on the foregoing, we affirm the trial court's judgment.


Lori Massey Brissette, Justice